Opinion issued March 11, 2010                                                      

 

 



 

 

 

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NO. 01-05-00603-CV

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



SUSAN C. CONTE, Appellant

 

V.

 

LOUIS M. DITTA, GUARDIAN OF THE ESTATE OF DORIS L.
CONTE, AN INCAPACITATED PERSON, Appellee

 

 



On Appeal from Probate Court No. 1

Harris County, Texas

Trial Court Cause No. 284,968-407

 

 



OPINION ON REMAND

          This
appeal is before us on remand from the Supreme Court of Texas.  Ditta
v. Conte, 298 S.W.3d 187 (Tex. 2009). 
Having reversed our Court’s earlier judgment that this trustee-removal
suit was barred by the four-year statute of limitations applicable to a
breach-of-fiduciary-duty claim, the Supreme Court remanded the case for
consideration of the merits of the appeal.

          Appellee, Louis M. Ditta (“Ditta”), acting in his
capacity as the Guardian of the Estate of Doris L. Conte (“Doris”), an
Incapacitated Person, filed suit seeking the removal of appellant, Susan C.
Conte (“Susan”), as trustee of the Conte Family Trust.  After a bench trial, the probate court ruled
in Ditta’s favor and issued two orders. 
The first order removed Susan as trustee, and the second order modified
the terms of the Conte Family Trust and appointed a successor trustee.  In three issues, Susan argues that the
probate court erred in (1) removing her from her position as trustee,
(2) modifying the trust’s prescribed method of appointing successor
trustees, and (3) appointing a successor trustee.  We affirm in part and reverse and remand in
part for orders consistent with this opinion.

Background

In 1987, Joseph and Doris Conte
created the Joseph P. Conte Family Trust, an inter vivos trust that became
irrevocable on the earlier of Joseph or Doris’s death.  The Trust agreement named Joseph the original
trustee.  Upon Joseph's death in 1993, per
the terms of the Trust, Doris began serving as co-trustee along with her two
children, Susan and Joseph, Jr.  The
co-trustees were obliged to create and fund three separate trusts for the
primary benefit of Doris, during her lifetime.  The co-trustees were to distribute quarterly
income from a management trust to Doris, as well as principal amounts requested
by Doris for “her comfort, health, support and maintenance, in order to
maintain” the equivalent lifestyle to which Doris was accustomed at the time of
Joseph's death.

Initially, Joseph, Jr. managed the
Trust’s day-to-day affairs.  About two years
later, Susan and Doris discovered that Joseph, Jr. was not administering the
Trust in accordance with its terms. This discovery heralded a proliferation of
litigation, including eight separate lawsuits between Susan and Joseph, Jr.[1]  In the course of one of these suits, Doris was
declared mentally incapacitated.  In an
agreed order, Susan was appointed guardian of Doris’s person, and Louis Ditta,
appellee in this case and an attorney, was appointed guardian of Doris’s
estate.  Due to the declaration of incapacity,
Doris was removed from her position as a co-trustee of the Trust, leaving Susan
and Joseph, Jr. with the joint responsibility of administering and managing the
Trust.

In August 1998, Ditta sought
appointment of a receiver to take over the Trust, claiming that the discord
between Joseph, Jr. and Susan was materially injuring the Trust assets.  Instead of appointing a receiver, the probate
court entered an agreed order appointing a temporary successor trustee, Paula
Miller.  Pursuant to the order, the
trustee powers of both Susan and Joseph, Jr. were temporarily suspended.  In June 2000, Miller filed an accounting for
the Trust with the court that covered March 8, 1993 (the date of Joseph’s
death) to December 31, 1999.  The
accounting revealed that both Susan and Joseph, Jr. had become significantly
indebted to the Trust by using Trust assets for personal expenses.  The Trust agreement did not authorize payment
of personal expenses of a trustee out of the Trust funds.

Susan initially contested the
accounting, but the parties eventually entered into an agreed judgment in
January 2001. The agreed judgment approved Miller’s accounting that Susan owed
the Trust $420,423.32, plus accrued interest on the indebtedness at a rate of
6% per annum, and Joseph, Jr. also owed a larger debt to the Trust.  The agreed judgment provided that collection
of the amounts owed by Susan and Joseph, Jr. would be deferred during Doris’s
lifetime, unless the probate court later found that Doris’s “financial needs”
required earlier repayment.  Miller
continued to serve for more than six years as temporary successor trustee under
the supervision of the court.  Miller was
charged with funding the three separate trusts, as expressed in the Trust, a
task which Joseph, Jr. and Susan never completed during their administration of
the Trust.  Miller’s subsequent
accountings brought the records up-to-date through September 2004.  As of September 2004, with the accumulation
of interest, Susan owed $515,534.32, Joseph, Jr. owed $899,529.80, and Conte
Investments (a company held half by Susan and half by Joseph, Jr.) owed
$702,276.34.  

In January 2003, Ditta persuaded the
probate court to remove Joseph, Jr. as trustee based on his violations of the
Trust agreement.  Thereafter, only Susan
(whose trustee powers were suspended) and Miller (the temporary successor
trustee) remained as trustees.  On April
5, 2004, Ditta filed this suit, seeking Susan’s removal as trustee.  On both April 27 and November 3 of that same
year, Susan and Joseph, Jr., in their capacity as beneficiaries of the Trust,
signed documents, pursuant to the terms of the Trust,[2] to
reappoint Susan as trustee if she were removed by the court in the removal
proceeding initiated by Ditta.

Following a bench trial, the probate
court removed Susan as trustee, modified the terms of the Trust regarding
trustee succession, and appointed Frost Bank as successor trustee.  This appeal followed.  At some point during the pendency of the
appeal, Frost Bank resigned from its position as trustee.  The parties, including Ditta, entered into an
agreed order appointing Susan temporarily as substitute successor trustee under
a $1 million bond and supervised by the court as a dependent administrator.  Despite Frost Bank’s resignation, the parties
are in agreement that the case is not moot because controversies still exist as
to the propriety of the trial court’s removal of Susan as trustee, its modification
of the terms of the Trust, and its power to appoint a successor trustee. 

On appeal, this Court reversed,
holding that the trial court erred in removing Susan as trustee because Ditta’s
removal action was barred by the four-year statute of limitations governing
breach-of-fiduciary-duty claims.  Additionally, our Court held that the probate
court erred in modifying the terms of the Trust and appointing a successor
trustee because it took those actions based on a time-barred petition.  On discretionary review, the Texas Supreme
Court held that “[n]o statute of limitations period applies in a
trustee-removal suit.”  Ditta, 298 S.W.3d at 192.  On remand from the Texas Supreme Court, we
consider the issues we did not reach.

Discussion

A.      Removal of Susan as Trustee

Susan argues that the trial court
erred in removing her from her position as the sole remaining trustee of the
Trust.  Specifically, she argues that
there is no evidence supporting the trial court’s stated reasons for her
removal and the removal action was barred by the doctrines of election of
remedies and waiver.

1.     Bar on Removal Action

Susan argues that the removal action
is barred or waived because of an earlier settlement.  Susan points to a settlement agreement between
the parties relating to her indebtedness to the Trust for money used on
personal expenses.  Susan contends that
the settlement was an “election of remedies” precluding or waiving removal
action.  

We reject this argument because, as
the Supreme Court held, the removal action seeks to prevent future injury,
which is distinguishable from a monetary settlement remedying past injury.  Id.
 The Supreme Court rejected Susan’s earlier
claim that the statute of limitations for breach of fiduciary duty applies to a
trustee-removal action.  Id.  Because the removal suit seeks to prevent
future harm to the Trust, Susan’s past settlement of monetary claims does not
preclude or waive removal actions to prevent future harm.  See id.

2.     Merits of Susan’s Removal

Additionally, Susan argues that there
was no evidence supporting the trial court’s stated reasons for her
removal.  At Susan’s request, the trial
court issued findings of fact and conclusions of law, which provided in part:

1.       As
co-trustee of the Trust, Susan C. Conte materially violated the terms of the
Trust by paying her personal expenses out of the Trust.

 

2.       Susan C.
Conte’s violation of the terms of the Trust resulted in a material financial
loss to the Trust. 

 

3.       Susan C.
Conte’s violation of the terms of the Trust resulting in her removal is a
breach of trust. 

 

4.       Susan C.
Conte is personally indebted to the Trust, therefore, her personal interests
are adverse and in conflict with her duties as trustee. 

 

5.       Extensive
litigation and hostility between Susan C. Conte and Joseph P. Conte, Jr.
adversely affected their ability as co-trustees to administer the Trust
consistent with its purpose. 

 

Susan concedes that the stated
reasons for her removal are proper grounds but argues that there is no evidence
supporting the court’s stated reasons.

a)   
Standard of Review

A court may, in its discretion,
remove a trustee on the petition of an interested person and after hearing if “the
trustee materially violated or attempted to violate the terms of the trust and
the violation or attempted violation results in a material financial loss to
the trust” or “in the discretion of the court, for other cause.”  Act of May 22, 2003, 78th Leg., R.S., ch. 550,
2003 Tex. Gen. Laws 1871, 1872 (amended 2005) (current version at Tex. Prop. Code Ann. § 113.082(a)
(Vernon 2007)).[3]  Accordingly, we review a court’s removal of a
trustee under an abuse of discretion standard. 
Id.; see, e.g., Kappus v. Kappus,
284 S.W.3d 831, 838 (Tex. 2009).         

A trial court abuses its discretion
if it acts in an arbitrary or unreasonable manner without reference to guiding
rules or principles.  Garcia v. Martinez, 988 S.W.2d 219, 222
(Tex. 1999).  When reviewing matters
committed to the trial court’s discretion, we may not substitute our own
judgment for that of the trial court.  Walker v. Packer, 827 S.W.2d 833, 839
(Tex. 1992).  Under the abuse of
discretion standard, we review the evidence in the light most favorable to the
order and indulge every presumption in favor of the trial court's order.  See id.
at 839-40; Holley v. Holley, 864
S.W.2d 703, 706 (Tex. App.—Houston [1st Dist.] 1993, writ denied).  A trial court does not abuse its discretion
merely because it decides a discretionary matter differently than an appellate
court would in a similar circumstance.  Downer v. Aquamarine Operators, Inc., 701
S.W.2d 238, 242 (Tex. 1985).  If some
probative and substantive evidence supports the order, there is no abuse of
discretion.  Whitworth v. Whitworth, 222 S.W.3d 616, 623 (Tex. App.—Houston [1st
Dist.] 2007, no pet.).

b)   
Analysis

The probate court gave three reasons
for removing Susan: (1) Susan’s prior use of Trust funds to pay personal
expenses materially violated the terms of the Trust, resulting in a material
loss to the trust; (2) Susan’s indebtedness to the Trust and concurrent
responsibility to collect on that debt if Doris needed the funds created an
inherent and continuing conflict of interest; and (3) Susan’s tenuous relationship
with Joseph, Jr. impaired the performance of her trustee duties.  Susan argues that the record does not support
these conclusions.  

First, Susan argues that there is no
evidence that she materially violated the terms of the Trust in a manner that
caused a material financial loss to the Trust. 
Contrary to Susan’s assertion, Paula Miller provided testimony and
accounting schedules that showed Susan’s use of Trust money for personal
expenses.  Specifically, due to disputes
over the Trust, Doris, Susan, and Joseph, Jr. entered into an agreed order
appointing Paula Miller as temporary successor trustee to conduct an accounting
of the Trust.  Miller testified at trial
that her accounting of the Trust revealed that Susan used money from the Trust
to pay personal expenses during her tenure as a co-trustee.  Miller documented these expenses in a
schedule that was admitted at trial. 
Miller determined that Susan used a total of $420,423.32 of Trust money
on personal expenses.  Miller also
discovered that money from the Trust was impermissibly used by Conte
Investments, Inc., a company owned 50/50 by Susan and Joseph, Jr.

As of September 2004, due to the
accrual of interest, the amount owed to the Trust by Susan amounted to
$515,534.32 for her personal expenses and $702,276.34 for impermissible lending
of Trust money to Conte Investments.  The
Trust did not allow for Susan, as a trustee, to use money from the Trust to pay
for personal expenses.  Nor do the terms
of the Trust permit a trustee to lend funds of the Trust to himself or to an
entity owned by the trustee personally.  

All parties, including Susan, signed
an agreed judgment approving of Miller’s accounting, acknowledging Susan’s
indebtedness to the Trust for her misuse of funds, and deferring collection of
the indebtedness during Doris’s lifetime, unless her financial needs required
collection.  The “Agreed Final Judgment
on Accounting,” which Susan approved, conclusively shows that she is indebted
to the Trust for improper use of Trust funds while serving as a
co-trustee.  At the time of trial in
February 2005, Miller estimated the liquid assets of the Trust to be less than
$200,000 and anticipated those assets would be exhausted by the end of May
2005.  

Susan argues that, because she
entered into the agreed judgment acknowledging her indebtedness, the amounts
cannot be classified as a loss to the Trust. 
Susan argues that the assets cannot be considered a loss until a demand
for payment is refused.  Susan cites no
authority to support her position.  

Susan’s argument presumes that her
acknowledgement of indebtedness to the Trust cures any harm to the extent that
we cannot consider the misappropriations a loss.  In essence, she asserts that the previous
agreed judgment precludes us from considering her indebtedness as a loss.  If the statute were interpreted in the way
Susan suggests, a monetary recovery for a trustee’s breach would preclude
removal under Section 113.082(a)(1) for a material violation of the trust
resulting in material financial loss.  See Tex.
Prop. Code Ann. § 113.082(a).  Such a narrow interpretation of the statute
would be in conflict with the Supreme Court’s opinion.  See Ditta,
298 S.W.3d at 192.  Specifically, Susan’s
emphasis on the accounting characterization and resolution of the past harm is
misplaced; removal actions “exist to prevent the trustee from engaging in
further behavior that could potentially harm the trust.”  Id.
  The Supreme Court explained, “[a]ny
prior breaches or conflicts on the part of the trustee indicate that the
trustee could repeat her behavior and harm the trust in the future.”  Id.  

Initially Susan denied that she was
indebted to the Trust, and had it not been for Miller’s accounting, the misuse
of funds likely would have gone undiscovered. 
Susan’s acknowledgement of her indebtedness after being caught does not cure
the harm to the trust relationship. 
Additionally, we observe that Susan’s indebtedness to the trust is not a
documented loan, nor is it a secured loan. 
Susan has not attempted to repay the amounts owed.  It was within the trial judge’s discretion to
conclude that the money was a loss, as it was taken out of the Trust and has
not been repaid.

Susan also argues without supporting
authority that, if there was a loss to the Trust, it was not material.  Susan points to the fees charged by Miller
for serving as a temporary successor trustee in comparison to the amount of her
debt.  Susan draws this comparison in an
effort to minimize the amount she owes to the Trust.  But the propriety of Miller’s services is
uncontested in this proceeding.  

We conclude that the trial court did
not abuse its discretion in concluding that Susan materially violated the terms
of the Trust.  Similarly, the court did
not abuse its discretion in finding that there was material financial loss to
the Trust as a result of the breach.  

Because we conclude that the trial
court was within its discretion in removing Susan as trustee, we need not
address the trial court’s other grounds supporting the removal.

We overrule Susan’s first issue.

B.      Modification of Trust and
Appointment of Successor Trustee

          In her second point, Susan argues
that the trial court erred in appointing a successor trustee.  Specifically, Susan argues that the trial
court erred by modifying the terms of the Trust to allow the court to deviate
from the Trust’s terms for appointing a successor trustee.

          In
the court’s findings of fact and conclusions of law, the court concluded, in
relevant part:

6.       This
Court has the equitable power to deviate from the terms of the Trust agreement
and the statutory power to modify the terms of the Trust agreement due to
changes in circumstances since the creation of the Trust by the grantors. 

 

7.       It is in
the best interests of the Trust and Doris L. Conte to deviate from the terms of
the Trust agreement and modify the terms of the Trust agreement for appointing
a successor trustee as a result of Susan C. Conte’s removal, due to changed
circumstances, including the following, (i) improper use of funds of the Trust
by Susan C. Conte and Joseph P. Conte, Jr. to pay their personal expenses while
serving as co-trustees, (ii) substantial indebtedness owed to the Trust by
Susan C. Conte and Joseph P. Conte, Jr., (iii) lack of sufficient liquidity of
the Trust to meet the needs of the primary beneficiary of the Trust, Doris L.
Conte, and (iv) extensive litigation between Susan C. Conte and Joseph P.
Conte, Jr., while serving as co-trustees which interfered with the proper administration
of the Trust. 

 

8.       Further,
under the circumstances set forth above, it is impractical, inexpedient, and
would substantially impair the accomplishment of the purposes of the Trust to
permit Susan C. Conte and Joseph P. Conte, Jr., to re-appoint Susan C. Conte as
trustee upon her removal. 

 

9.       Further,
given this Court’s familiarity with the administration of the Trust for over
six and one-half years, and the concurrent jurisdiction of this court with the
Harris County Texas District Court in matters involving inter vivos trusts, it
is in the best interest of the Trust for this Court to appoint the successor
trustee rather than a district judge of Harris County, Texas.

          

The Texas Trust Code requires that,
on the removal of a sole trustee, a successor trustee must be appointed by the
court in accordance with the terms of the trust instrument.  Tex.
Prop. Code Ann. § 113.083(a) (Vernon 2007).  In this case, the terms of the Trust provided
that, in the event that the position of trustee became vacant, a series of
persons would have an opportunity to appoint the successor trustee.  The Trust gave the power of appointment first
to Joseph, Sr., and if not exercised by Joseph, Sr. within 30 days, then Doris
had the opportunity to appoint a successor.  If neither Joseph Conte, Sr. nor Doris Conte
appointed a successor in the first sixty days after the position of trustee was
vacated, the majority of adult beneficiaries had a thirty-day window within
which they could appoint a successor trustee.

The Trust in this case clearly shows
the grantor’s intent to leave decisions regarding the management of the Trust
to his wife and children.  The Trust also
states that “[n]o individual Trustee shall receive any compensation for serving
under this instrument.”  However, the
Trust provides for “fair and reasonable compensation” for a corporate trustee.  

The court is permitted to modify the
terms of a trust if, due to circumstances not known to or anticipated by the
settler, compliance with the terms of the trust would defeat or substantially
impair accomplishment of the purposes of the trust.  Act of May 9, 1985, 69th Leg., R.S., ch. 149,
§ 1, 1985 Tex. Gen. Laws 676 (amended 2005) (current version at Tex. Prop. Code Ann. § 112.054(a)(2)
(Vernon 2007)).  The court, however, does
not have unfettered discretion to modify the Trust in any way it chooses.  If the court finds that modification is
proper, the court must exercise its discretion to modify “in the manner that
conforms as nearly as possible to the intention of the settlor.”[4]  Id. (current
version at Tex. Prop. Code Ann. §
112.054(b) (Vernon 2007)).

In the court’s conclusions of law, it
concluded that it would be “impractical, inexpedient, and would substantially
impair the accomplishment of the purposes of the Trust to permit Susan C. Conte
and Joseph P. Conte, Jr., to re-appoint Susan C. Conte as trustee upon her
removal.”  It appears that the trial
court justified its modification of the Trust on the presumption that under the
Trust’s terms, Susan and Joseph, Jr., as a majority of the adult beneficiaries,
would have the power to appoint a successor trustee and they would use that
power to reappoint Susan.

As previously noted, the Trust
expresses the grantor’s clear intention to leave the power to appoint a successor
trustee to his wife and children.  The
preceding paragraph in the Trust addresses resignation of a trustee, requiring
that notice be given to the grantors or beneficiaries.  Notably, this paragraph specifies that “if
the person entitled to receive notice is a minor or an incompetent, such notice
shall be delivered to . . . such incompetent’s guardian.”  This provision shows that the grantor
anticipated the possibility of guardianship in drafting the Trust agreement.  Significantly, while the guardian is entitled
to receive notice on behalf of the ward, the Trust agreement does not provide
that the guardian can exercise a ward’s power of appointment.[5]  After reviewing the language of the Trust, it
is clear from the terms that the grantor did not intend the power to appoint a
successor trustee to be exercisable by a guardian on the ward’s behalf.  The omission of language giving the guardian
power is significant given the specific inclusion of such language in the
paragraph directly before.  Because we
must interpret the document in such a way that gives effect to each and every
provision without rendering any parts meaningless, we cannot interpret a grant
of power to “the Wife” to extend to the wife’s guardian.  See Alpert
v. Riley, 274 S.W.3d 277, 288 (Tex. App.—Houston [1st Dist.] 2008, pet.
denied).

Because Doris was unable to exercise
the power to appoint, that power would have been left to “a majority of the
adult Beneficiaries.”  It can be inferred
from the trial court’s conclusions of law that it also arrived at this
interpretation.  The court went on to
conclude that it would be “impractical, inexpedient, and would substantially
impair the accomplishment of the purposes of the Trust to permit Susan C. Conte
and Joseph P. Conte, Jr., to re-appoint Susan C. Conte as trustee upon her
removal.”  Based on this conclusion, the
court determined it was in the best interest of the Trust for the court to
appoint a successor.

We agree with the court that Susan’s
removal as trustee rendered her unqualified to serve as trustee.  In determining whether a trustee should be
removed, the court can consider prior breaches or conflicts, without
limitation, so long as potential harm exists. 
Ditta, 298 S.W.3d at 192 (“Any
prior breaches or conflicts on the part of the trustee indicate that the
trustee could repeat her behavior and harm the trust in the future.”).  Accordingly, we observe that reappointment
cannot be utilized to reinstate a trustee that the court previously removed.

However, the trial court erred in
giving itself the power to appoint a successor trustee.  Upon finding that it was not feasible for
Susan to be reappointed, the court should have modified the terms of the Trust
“in the manner that conforms as nearly as possible to the intention of the
settlor,” as required by Section 112.054(b) of the Property Code.  Act of May 9, 1985, 69th Leg., R.S., ch. 149,
§ 1, 1985 Tex. Gen. Laws 676 (amended 2005). 
Rather than limiting its exercise of discretion in light of the
grantor’s intentions, the court modified the Trust by depriving Susan and
Joseph, Jr. the opportunity to suggest a suitable trustee.  Rather than of making its own determination of what would be best,
the court’s modification should have been guided by the grantor’s clear
intention to allow the beneficiaries to appoint a successor trustee.  See Tex. Prop. Code Ann. § 112.054(b)
(providing that court should modify trust “in the manner that conforms as
nearly as possible to the intention of the settlor”).  

While Susan’s removal disqualified
her from reappointment as trustee, her missteps in her fiduciary role as
trustee do not strip away her rights as a beneficiary.  Per the terms of the Trust, the power to
appoint a successor trustee was left to “a majority of the adult
Beneficiaries.”  The grounds for Susan’s
removal as trustee have no bearing on her rights as a beneficiary.  The court should have allowed Susan and
Joseph, Jr. to select a successor trustee and simply modified the Trust by
restricting their choice of successor trustee to someone whom it had not
previously removed.  Such a restriction
would address the problem recognized by the court, while still giving effect to
the grantor’s intentions.

While we agree modification was
necessary, the trial court erred by not exercising its discretion in a manner
that conformed to the grantor’s intent.  See Tex.
Prop. Code Ann. § 112.054(b).  We
conclude that that the trial court abused its discretion in modifying the terms
of the Trust and by appointing the successor trustee because the court should not
have given itself the authority to appoint a successor in place of a majority
of the adult beneficiaries.

          We
sustain Susan’s second issue.

Conclusion

          We affirm the trial court’s judgment, in part, as to
the removal of Susan as trustee.  We
reverse, in part, as to the modification of the terms of the Trust and the
court’s appointment of a successor trustee, and remand for orders consistent
with this opinion.

 

 

                                                          George C. Hanks, Jr.                                                                                            Justice 

 

Panel consists of Justices Alcala,
Hanks, and Bland.











[1] Generally described, these suits were as follows: 

 

1.         A suit for declaratory judgment, filed by Doris and Susan,
seeking a declaration that a separate suit, filed by both Doris and Susan, to
remove Joseph, Jr. as co-trustee would not violate the “no contest” clause in
the Trust agreement. 

 

2.         A suit filed by Susan seeking a protective order against
Joseph, Jr. subsequent to an incident of family violence and assault.

 

3.         A suit filed by Joseph, Jr., against Susan and Doris,
alleging that the two women had no authority, in their capacities as
co-trustees, to direct the affairs of Joe Conte Toyota, Inc.

  

4.         A suit filed by Susan against Joseph, Jr. for fraud,
conversion, and breach of fiduciary duty.

  

5.         A suit for declaratory judgment, filed by Susan alone,
seeking a declaration that a suit by Susan to remove Joseph, Jr. as trustee
would not violate the “no contest” clause of the Trust agreement. 

 

6.         A suit filed by Susan against Joseph, Jr. and his attorneys
for conversion and interference with the conduct of the day-to-day
administration of the Trust.

 

7.         A suit filed by Joseph, Jr., against Susan and Doris,
seeking the rescission of a settlement agreement entered into by the
co-trustees and a trust accounting. 

 

8.         An application filed by Joseph, Jr. for the appointment of a
temporary guardian for Doris and a motion contesting that application filed by
Susan.  

 





[2] The
Trust provided that, should the position of trustee become vacant, a series of
persons would have an opportunity to appoint the successor trustee. If neither
Joseph Conte, Sr. nor Doris Conte appointed a successor in the first sixty days
after the position of trustee was vacated, the majority of adult beneficiaries
had a thirty-day window within which they could appoint a successor trustee.

 





[3]
Citation references statute in effect at time of trial court’s judgment.





[4] For
the purposes of this opinion, we use the terms “grantor” and “settlor”
interchangeably.  We note that in the
Trust agreement, Joseph, Sr. refers to himself as the “grantor.”  The Trust Code uses the term “settlor” to
mean creator of a trust, but also provides that the terms “grantor” and
“testor” mean the same as “settlor.”  Tex. Prop. Code § 111.004.





[5] We
note that Ditta serves as guardian of Doris’s estate, giving him the power to
manage her property.  Susan serves as
guardian of Doris’s person, giving her power over Doris’s care, supervision,
protection, and medical decisions.