

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| | § | No. 08-18-00074-CV |
| IN THE MATTER OF TROY S. POE TRUST | § | Appeal from |
| | § | |
| | § | Probate Court No. 1 |
| | § | of El Paso County, Texas |
| | § | (TC # 2016-CPR00308) |
| | § | |

**O P I N I O N**

Under the Troy S. Poe Trust, the trustees are required to agree on all decisions. The problem here is that the two remaining trustees also happen to be combatants in other protracted litigation. In this proceeding, one of the trustees moved to modify the trust to: (1) add a third trustee into the mix; (2) require only a majority, and not a unanimous decision by the trustees; and (3) further define the scope of acceptable trust expenditures. Following a bench trial, the probate court agreed and modified the terms of the trust as requested. The other trustee now appeals that judgment, claiming in main part that the probate court's decision fails to conform as nearly as possible to the probable intention of the settlor, and in any event, a jury should have decided disputed fact questions.

We hold that the predicate questions of whether the trust needed to be modified was a fact question that should have been decided by a jury upon a proper jury demand. Because we remand

for a new trial on that issue, we find it unnecessary to decide if the trial court's particular modifications were proper.

## FACTUAL BACKGROUND

### The Troy S. Poe Trust

Richard C. Poe, who commonly appeared in commercials as "Dick Poe," operated a number of car dealerships. We will refer to him in this opinion as Dick Poe, or more simply, Dick. At the time of his death, he had two adult sons, Troy Poe ("Troy') and Richard C. Poe II ("Richard"). Troy was born with cerebral palsy and is totally disabled. Fortunately for Troy, Dick's dealerships were financially successful which allowed Dick to provide for Troy's security.

To that end, in 2007 Dick set up a trust to provide for Troy, appropriately enough called the Troy S. Poe Trust. When it was established, the trust included three named trustees: Dick, Richard, and the accountant who at that time did work for both--Anthony Bock. If one of the originally named trustees failed or ceased to serve, the trust document stated that "the remaining Trustees or Trustee shall have the right to serve as sole Trustee hereunder, without appointment of a successor co-Trustee." Upon the last remaining trustee's failure to serve, a specific bank was named as the sole trustee. But in case of a resignation that would otherwise leave no remaining trustees, the trust document provided that the resignation would not be effective until Dick, or if he was unable, a court of competent jurisdiction, appointed a successor trustee.

By 2017, the trust had two significant assets. First, it held title to land on which one of Dick's dealerships operated and for which it paid rents to the trust. It also held title to a shopping center and collected rental payment from that property. Under the terms of the trust, the trustees must use the net income for the benefit of Troy. The trustees were also authorized to invade the principal of the trust, but only for Troy's "health, education, maintenance or support." As of the

2

date of the proceeding below, however, the trust had never needed to rely on principal to pay any of Troy's expenses.[1]  Upon Troy's death any remaining trust assets would be paid to Dick's "then living issue, in equal shares, per stirpes."  At the time of this proceeding, the only living issue was Richard.  The trust was irrevocable and qualified as a spendthrift trust.  *See* TEX.PROP.CODE ANN. § 112.035(a).

The trust also contained a provision that the trustees were to take actions "jointly" which the parties agree requires unanimity for trustee decisions.  Despite this term,  from its inception in 2007 until Dick's death on May 16, 2015, Dick made the majority of the decisions regarding Troy and distributions from the trust.  There was one notable exception.  Troy has a full-time caretaker, Angel Reyes, Jr. who has provided for Troy's care since 1998.  In September 2010, the trust entered into a ten-year "Care Agreement" with Reyes that set out the terms of his duties, salary, and benefits.  All three trustees signed the original care contract in 2010 and a ten-year extension executed in February 2015.[2]

The nature of the care agreement necessitates that the trust makes periodic on-going decisions.  Troy lives in a house that Dick had specially built for him.  Reyes, per the terms of the Care Agreement, also lives in the same house.  The care agreement contemplates that Reyes will advance the cost of "reasonable out-of-pocket expenses for Troy's care and maintenance" which would be reimbursed, but only up to a monthly cap.  Reyes was responsible for providing documentation  to establish the *bona fides* of those expenses.  In practice, those expenses included household expenses such as food and utilities.  The trust was also responsible for other expenses,

---

[1] The parties also point out that Troy has a separate trust administered by WestStar Bank, and that he will be one of three beneficiaries to a third trust set up out of Dick's estate.

[2] The care agreement could terminate, however, on Troy's passing.  By the time this case was tried, Troy had already outlived his life expectancy, something that Dick attributed to the care he receives.

such as transportation, insurance, and a share of a housekeeper's cost.  Each month Reyes would submit for review a recap of those expenses for reimbursement.  Additionally, Reyes travels with Troy.  The trust (and thus the trustees) must review those expenditures, and others, such as medical equipment, medical expenses, and the like.  During his life, Dick handled those functions.

### The Share Issuance Litigation

The origin of this suit begins with Dick's death in 2015.  As explained in more detail in another case before this Court, several weeks before his death Dick instructed his lawyer, Paul Sergent, Jr., to proceed with a stock transaction that would effectively ensure that control of Dick's dealerships would pass to his executors, and not to Richard.[3]  To accomplish the transaction, Anthony Bock as the company's accountant calculated the "book value" of the new stock being issued.  And likely more upsetting to Richard, Bock had also been named as a co-executor under Dick's will, meaning that Bock and not Richard would be running the dealerships and other family businesses.  Nor did it help matters that Richard was not told about the stock purchase until after Dick's death.

Richard sued Bock, Paul Sergent, Jr., and Karen Castro (the other executor of Dick's estate) in what the parties refer to as the share issuance litigation.  By the time Richard filed an Eighth Amended Petition in that suit, he asserted a number of claims against Bock, including breaches of fiduciary duties.  Richard sought rescission of the share issuance, as well as actual and punitive damages from Bock and others.  He also sought to remove Bock as a trustee from a separate estate trust set up under Dick's will.  Richard premised that claim on the "hostility, ill will, and distrust" between Bock on the one hand, and Richard and Troy, on the other.  He also sought an accounting

---

[3] *See In the Matter of the Estate of Richard C. Poe Deceased*, No. 08-18-00015-CV (Tex.App.--El Paso, Aug. 28, 2019).  The same probate judge heard both cases.  Any reference to events from the other case that we note here is only included for the reader's understanding.  We decide this case only on the facts admitted in this record.

4

for estate assets and distributions. Several claims in the share issuance litigation were tried in May of 2017, resulting in cancellation of the shares, but no personal liability for damages against Bock. Both sides appealed that judgment to this Court.

## Post-Death Administration of the Troy S. Poe Trust

After Dick's death, Bock looked at the history of distributions that Dick had made under the trust and essentially tried to follow the same pattern. Just like Dick had not regularly included the other co-trustees, Bock initially did not involve Richard in that process. Following trial of the share issuance litigation in May of 2017, however, Richard's lawyer served a letter on Bock's attorney demanding that Bock "strictly comply" with the Trust's requirement that the co-trustees "act jointly" in taking actions on behalf of the trust. Following that communication, Bock began forwarding copies of Reyes's reimbursement requests, other household bills, and other invoices that were submitted to the trust for Richard's approval. All communications were accomplished by email, with carbon copies to Bock's and Richard's litigation counsel, as well as Troy's guardian ad litem. Bock declined to engage in any oral communications with Richard.[4]

The emails covered a period from July 2017 up to January 2018 when this matter was tried. For that period, Bock claimed that Richard delayed in responding to some requests and ignored others.[5] By late December 2017, Bock started to include language in reimbursement requests requiring a response by date certain, and failing that, he would proceed with issuing the

---

[4] As Bock explained it:

> I'm trying to be cautious. Mr. Poe, Richard Poe has sued me -- I believe twice in this Court, once in another court. He is now suing me in federal court. He tried to have the Texas State Board revoke my license. And I just feel because of those actions, I need to handle my actions as trustee prudently. And I feel that having a written record of our communication is safe for all -- safest for all parties involved.

[5] He specifically claims Richard delayed in approving the August 2017 reimbursement request sent on September 25, 2017, resent October 20, and to which Richard responded on October 27, 2017. Bock also evidenced a bill for lawncare and dentistry services to which Richard never responded.

5

reimbursement check. Richard claimed he did not always receive the emails and requested that Bock "text" him if Richard did not timely respond to an email. He also pointed to delays by Bock and Angel Reyes in submitting bills.[6]

On some issues, Richard and Bock reached agreement. For instance, they agreed that none of Reyes's expense reports should include reimbursement requests for alcohol. They eventually agreed on a cheaper automobile insurance policy. Richard also approved Bock's accounting firm's statements for services rendered to the trust. On other issues they disagreed. Bock wanted a standing agreement on reoccurring expenses, such as Reyes's bi-monthly salary, Troy's health insurance premium, and yard and pool services. Richard declined to give preapproval on any expense. Annually, Dick had given Reyes a Christmas bonus out of his own pocket. Bock wanted the trust to continue that practice for 2017, but Richard declined. Reyes's wife and child also lived in the house, and his family regularly attended dinners and other social outings. Reyes and his immediate family also traveled with Troy. Bock reasoned that Dick had paid a share of those expenses, and Troy considered Reyes, his wife, child, and their extended family as part of his own family. Richard, however, objected to reimbursing expenses for the extended family members.

And on one issue they absolutely disagreed. Bock had submitted his attorney's bill for conducting this litigation to the trust. Richard refused to approve any of those bills.

Most of the communications were civil, but some less so.[7] Bock was also made aware of a text message where Richard accused him of theft. Richard referred to Bock as "the crooked

---

[6] Reyes's October and November expense reports were received by Bock on December 6, 2017 and not forwarded to Richard until December 22, 2017. They remained unpaid as of January 23, 2018 when the case was tried.

[7] By way of example, Richard was reviewing each receipt from Reyes, questioning whether third persons might have been included in dining expenses or the like. Bock argued that the amount of the expenses so greatly exceeded the monthly cap, that the time and effort in fly-specking every receipt was not worth the effort, or if the expenses were evaluated on a "per diem" cost basis, the amount was well below acceptable reimbursement rates. They never agreed on that issue, and Richard once wrote:

6

CPA" who was trying to "steal all [Troy's] money" and "take over his trust funds" with Angel Reyes "behind a lot of it[.]" He accused Bock of paying for a vehicle and a home remodeling project with "stolen money from Troy"-- a claim that Bock steadfastly denied.

## PROCEDURAL BACKGROUND

Bock originally filed this suit on March 1, 2016. He sought to modify the trust only with respect to the number and manner of succession of the trustees, as well as the unanimity requirement for trust decisions. The probate court appointed a guardian and attorney ad litem for Troy. At least from the docket sheet, the case was inactive until July 2017 following the trial of the share issuance litigation.

Bock then filed an amended petition which again sought the addition of a third trustee, and modification of the unanimity requirement. The amended petition also sought other changes: (1) authorizing travel and vacation expenses for Troy along with travel companions; (2) requiring that the trustees give primary consideration to Troy, and not any contingent remainder beneficiary; (3) that the trustees take into consideration Troy' standard of living at the time of Dick's death and the "substantial ancillary expenses" due to Troy's disability; and (4) that the trustees consider that indirect benefits to Troy's caretakers and their families enhance the quality and enjoyment of Troy's life. Richard responded with a counterclaim, asserting that Bock failed to include Richard in trust decisions. He sought an accounting for any unilateral decisions, and repayment of money or restoration of any property improperly paid out from the trust. Richard demanded a jury trial on any "questions so triable."

---

I am only trying to do the right thing by Troy, his trust, and everyone involved. A big part of that is fiscal responsibility. You were going to cut a check for ten thousand dollars for car insurance. Insane. With minimal work we were able to reduce that to two thousand. You do not have the same goals in mind. We all know that.

The probate court set the matter for a bench trial. Richard objected, seeking both a jury trial and consolidation of the case with another case seeking to remove Bock as trustee from a trust set up under Dick's will. Nonetheless, the probate court proceeded with a non-jury setting only on this trust.

### The Trial Court's Judgment

Following a two-day hearing, the probate court entered an order modifying the trust in two significant ways. First, it named one of Troy's cousins as the third trustee, and it appointed a local attorney and family friend as a successor trustee if one the three trustees were unable or unwilling to serve. The order further set a procedure for ensuring that there would always be at least three trustees, who could decide questions by a majority vote. This change is underpinned by the probate court's finding of fact that because of "changed circumstances" since Dick's death, "the purposes of the Trust have become impossible to fulfill, and modification will further Trust purposes." Specifically, the probate court found that after Dick's death the two remaining trustees "have been unable to reach unanimity on decisions concerning the administration of the Trust."

Second, the probate court added several provisions that guide the trustees in making distribution decisions. The probate court added language to the trust specifically authorizing Troy's periodic vacations, to include "travel companions as may be necessary or appropriate as determined by the Trustees in their discretion." The probate court supported this change with a fact-finding that Troy, Reyes, Reyes's wife and child, and their extended family are functioning as a one family unit. As such, it could be preferable for them to travel with Troy. The trustees were also directed to take into consideration Troy's standard of living at time of Dick's death and the necessity to "incur substantial ancillary expenses due to Troy's disabilities." The trust document was modified to acknowledge the "indirect" benefits that might inure to Troy's care

8

givers and their families. The trustees were directed to consider "these additional expenses that enhance the quality and enjoyment of Troy's life." The probate court supported these additions with a fact-finding that Dick during his lifetime made substantial gifts and provided other significant benefits to Troy, as well as Reyes and his family. Finally, the trustees were directed to take into primary consideration the needs, interests, and desire of Troy, "without giving any consideration to the interests of any vested or contingent remainder beneficiaries." The probate court supported this change with a fact-finding that to do otherwise would "thwart the sole purpose of the Trust to provide for Troy."

## DISCUSSION

Richard raises two issues for our review. First, he claims that the probate court's modification to the trust is improper because it contravenes Dick's unambiguous intent that: (a) the trustees are to make decision jointly; (b) successor trustees would not be appointed, save and except if the last trustee resigns; and (c) trust assets can be used for Troy, but not necessarily his caretaker's extended family and friends. In his second issue, Richard complains that the probate court denied him a jury trial. We begin with an overview of the controlling trust code provisions.

### Controlling Law

Trusts are governed by Texas Trust Code, found within the Texas Property Code. That code includes a specific provision for the judicial modification of a trust. TEX.PROP.CODE ANN. § 112.054. Under that provision, "[o]n the petition of a trustee" the court may order "that the terms of the trust be modified, that the trustee be directed or permitted to do acts that are not authorized or that are forbidden by the terms of the trust, [or] that the trustee be prohibited from performing acts required by the terms of the trust" upon one of five conditions. *Id.* at § 112.054(a). Two of those conditions are at issue here:

9

(1) the purposes of the trust have been fulfilled or have become illegal or impossible to fulfill;

(2) because of circumstances not known to or anticipated by the settlor, the order will further the purposes of the trust;

*Id*. at § 112.054(a)(1), (2). Upon meeting one of those conditions, "[t]he court shall exercise its discretion to order a modification" that "conforms as nearly as possible to the probable intention of the settlor." *Id*. at § 112.054(b); *see also Conte v. Ditta*, 312 S.W.3d 951, 959 (Tex.App.--Houston [1st Dist.] 2010, no pet.)(noting that the court "does not have unfettered discretion to modify the Trust in any way it chooses"). Additionally, the court shall consider spendthrift provisions as one factor in making its decision, but it is not precluded from exercising its discretion solely because the trust is a spendthrift trust. *Id.* We review a modification decision under an abuse of discretion standard. *See In re Willa Peters Hubberd Testamentary Trust*, 432 S.W.3d 358, 365 (Tex.App.--San Antonio 2014, no pet.); *Conte,* 312 S.W.3d at 961.

**Was Richard Entitled to a Jury Trial?**

Richard's second issue claims the trial court erred in denying him a jury trial on triable issues of fact. We resolve that question first, because if the adjudicatory process that determined the trust should be modified is tainted, how the probate court modified the trust is at best an academic question. We review the trial court's denial of a party's demand for a jury trial for an abuse of discretion. *Mercedes-Benz Credit Corp. v. Rhyne*, 925 S.W.2d 664, 666 (Tex. 1996). The guiding rules and principles governing the right to a jury trial are found in the Texas Constitution, our statutes, and court rules.

The Texas Constitution addresses the right to a jury trial in two distinct provisions. The first, found in the Bill of Rights, provides that the "right of trial by jury shall remain inviolate." TEX.CONST. art. I § 15. But this provision has been held to "maintain a right to trial by jury for those actions, or analogous actions, tried by jury when the Constitution was adopted in 1876."

10

*Oncor Electric Delivery Co. LLC v. Chaparral Energy, LLC*, 546 S.W.3d 133, 144 (Tex. 2018)

*quoting Texas Workers' Comp. Com'n. v. Garcia*, 893 S.W.2d 504, 526 (Tex. 1995). And Richard

has not shown that trust modifications were tried to a jury in 1876 or before.[8]

The Texas Constitution also contains another provision governing jury trials in its judiciary

article:

> In the trial of all causes in the District Courts, the plaintiff or defendant shall, upon
> application made in open court, have the right of trial by jury; but no jury shall be
> empaneled in any civil case unless demanded by a party to the case, and a jury fee
> be paid by the party demanding a jury, for such sum, and with such exceptions as
> may be prescribed by the Legislature.

TEX.CONST. art. V, § 10. This section is broader than the Section 15 right to jury in the sense that

it does not depend on court practice in 1876 or before. *Garcia*, 893 S.W.2d at 527. It is narrower

in the sense that it only applies to "causes." *Id*. But the Texas Supreme Court views the term

"causes" expansively, and that court has only restricted the right to jury trial in specific contexts

where "some special reason" made jury trials unsuitable, such civil contempt proceedings, election

contests, suits to remove a sheriff, and appeals in administrative proceedings. *State v. Credit*

*Bureau of Laredo, Inc.*, 530 S.W.2d 288, 292 (Tex. 1975)(collecting authorities defining "causes"

and those areas where the court has limited jury trials).

---

[8] The equitable doctrine of deviation empowered equity courts to override trust terms for emergencies or changed circumstances. *See* George Taylor Bogert, *The Law of Trusts and Trustees*, § 561 (1980). But most states carried forward the English tradition that judges decide issues in equity courts and juries are reserved for law courts. *See Reynolds-Penland Co. v. Hexter & Lobello*, 567 S.W.2d 237, 245 (Tex.Civ.App.--Dallas 1978, writ dism'd by agr.)(Guittard, C.J., dissenting)("Under the English equity practice adopted in most states, there is no right to trial by jury and the equitable discretion of the chancellor includes the power to find facts."). Not surprisingly, the out-of-state authority supports an equity court's authority to modify the terms of a trust, but none involve jury trials. *See e.g. T.J. Moss Tie Co. v. Wabash Ry. Co.*, 11 F. Supp. 277, 284 (S.D.N.Y. 1935)(noting authority to modify based on English precedent from 1901); *Marsh v. Reed*, 56 N.E. 306, 308 (Ill. 1900)(based on findings of court master, court allowed lease longer than trust term permitted); *In re Newark Sav. Inst.*, 28 N.J. Eq. 552, 556 (N.J. Ch. 1877)(court taking control over and distribution of trust assets in failed bank). Texas merged the equity and law courts. *San Jacinto Oil Co. v. Culberson*, 101 S.W. 197, 198, 199 (1907). We have not been directed to, nor have we found any pre-1876 Texas authority for trial of a trust deviation dispute. Some authority post-1876 shows how juries could be utilized in a deviation proceeding. *See Coffee v. William Marsh Rice U.*, 408 S.W.2d 269, 285 (Tex.Civ.App.--Houston 1966, writ ref'd n.r.e.)(based on jury findings, trial court modified William Marsh Rice's original trust that only funded white students to attend Rice University).

11

The Texas Constitution also gives the legislature authority to regulate jury trials to maintain their "purity and efficiency." TEX.CONST. art. I, § 15. In that regard, we look to the statutory framework to determine whether parties possess a right to a jury trial. Richard points us to two statutory provisions: one in the Property Code and one in the Estates Code.

District courts are accorded original and exclusive jurisdiction over all proceedings by or against a trustee and all proceedings concerning trusts, except for jurisdiction conferred by law on a statutory probate court. TEX.PROP.CODE ANN. § 115.001(a) and (d). In a county in which there is a statutory probate court, the statutory probate court has jurisdiction of "an action by or against a trustee" and an action "involving an inter vivos trust[.]" TEX.EST.CODE ANN. § 32.006(1),(2). And the Estates Code provides for jury trials in a "contested probate or mental illness proceeding" as in other civil actions. TEX.EST.CODE ANN. § 55.002. But the same code defines "probate proceedings" to include "a matter or proceeding relating to a decedent's estate." *Id*. at § 22.029. We agree with Bock that the Estates Code does not mandate a jury trial.

But the Trust Code provides that "[e]xcept as otherwise provided, all actions instituted under this subtitle are governed by the Texas Rules of Civil Procedure and the other statutes and rules that are applicable to civil actions generally." TEX.PROP.CODE ANN. § 115.012. The Texas Constitution guarantees the right to trial by jury, subject to regulation by the legislature. Those regulations are largely found in the Rules of Civil Procedure and outline how one requests a jury. Compliance with those rules would thus give Richard a right to a jury trial.

Bock urges, however, that the specific statutory language of Section 112.054 precludes jury trials in trust modification proceedings. That Section provides in subsection (a) that the "court may order" modifications of a trust upon certain conditions, and in subsection (b) that the "court shall exercise its discretion" in framing those modifications. TEX.PROP.CODE ANN. § 112.054.

12

And certainly, where there is an apparent conflict between two statutory provisions, the statute dealing with the specific topic controls over the general. *See Holmes v. Morales,* 924 S.W.2d 920, 923 (Tex. 1996). If there were a conflict between Section 112.054 that controls trust modification, and the more general Section 115.002 that generally provides for jury trials, the specific provision would control. But we are not convinced of an actual conflict. Section 112.054 vests the trial court with the duty of redrafting the trust terms if one of five predicates are met. The statute does not explicitly provide that it is the trial court who determines whether those predicates exist. The legislature certainly knows how to unambiguously restrict the right to a jury trial on a specific issue. *See* TEX.FAM.CODE ANN. § 6.703 (allowing jury for dissolution of a marriage except for specified annulment proceedings); TEX.FAM.CODE ANN. § 105.002 (while allowing jury trial in general for suits affecting parent child relationship, limiting that right for specified issues); *In re Kuhler*, 60 S.W.3d 381, 382-83 (Tex.App.--Amarillo 2001, no pet.)(finding no right to jury trial under temporary guardianship statute which specifically provides "the *court* determines that the applicant has established" the requisite grounds)(emphasis original). We find no comparable limitations in Section 112.054.

Under Texas law, the right to a jury trial extends to disputed issues of fact in equitable, as well as legal proceedings. *San Jacinto Oil Co. v. Culberson*, 101 S.W. 197, 198 (Tex. 1907)("The question whether or not the proceeding was legal or equitable is wholly immaterial. The combined effect of section 8 and 10 of article 5 of the Constitution is to give the right in all causes, and without regard to any distinction between law and equity, upon demand and payment of the prescribed fee.")(internal quotes omitted); *Hayes v. State*, 518 S.W.3d 585, 592 (Tex.App.--Tyler 2017, no pet.)(right to jury trial upheld in action by State to seize and euthanize pets). And as a general rule, "when contested fact issues must be resolved before equitable relief can be

determined, a party is entitled to have that resolution made by a jury." *Hill v. Shamoun & Norman, LLP*, 544 S.W.3d 724, 741 (Tex. 2018), *quoting Burrow v. Arce*, 997 S.W.2d 229, 245 (Tex. 1999). "Once any such necessary factual disputes have been resolved, the weighing of all equitable considerations . . . and the ultimate decision of how much, if any, equitable relief should be awarded, must be determined by the trial court." *Hudson v. Cooper*, 162 S.W.3d 685, 688 (Tex.App.--Houston [14th Dist.] 2005, no pet.), *citing Burrow*, 997 S.W.2d at 245-46. The trial court, and not the jury, determines the "expediency, necessity, or propriety of equitable relief." *State v. Tex. Pet Foods, Inc.*, 591 S.W.2d 800, 803 (Tex. 1979).

Based on these general principles, Richard complains that the predicate question of whether there were changed circumstances, or the purpose of the trust had become impossible to fulfill, were for a jury to resolve. Bock offers three additional reasons why the right of jury trial would not apply here. First, he contends that the grounds for modification were established as a matter of law and whether tried to the court or a jury, the result would be the same. Stated otherwise, the lack of a jury forum was harmless error. Second, Bock contends that Richard as a trustee has no justiciable interest in the terms of the trust, and thus no right to insist on due process grounded rights, such a jury trial. Finally, he contends that Richard failed to pay the jury fee and thus forfeited the right to claim error. We take those issues in reverse order.

**Jury Fee**

Rule 216 provides that:

a. Request. No jury trial shall be had in any civil suit, unless a written request for a jury trial is filed with the clerk of the court a reasonable time before the date set for trial of the cause on the non-jury docket, but not less than thirty days in advance.

b. Jury Fee. Unless otherwise provided by law, a fee of ten dollars if in the district court and five dollars if in the county court must be deposited with the clerk of the court within the time for making a written request for a jury trial. The clerk shall promptly enter a notation of the payment of such fee upon the court's docket sheet.

14

TEX.R.CIV.P. 216. Rule 216 sets up two basic requirements for entitlement to a trial by jury in a civil case. First, there must be an application or demand for a jury trial and second, a fee must be deposited with the clerk within the time set out in the Rule. *Dawson v. Jarvis*, 627 S.W.2d 444, 446 (Tex.App.--Houston [1st Dist.] 1981, writ ref'd n.r.e.). Richard made a jury demand when he answered the suit; Bock contends that the failure to pay the fee forfeits any complaint over the non-jury hearing.

The record below does not contain any pleading or hearing addressing the payment of the jury fee, nor does the docket sheet show it was paid. *See* TEX.R.CIV.P. 216 (requiring the clerk to note the payment of the fee on the docket sheet). Richard does not contest on appeal the failure to pay the fee, and we will take that as a conceded fact. Rather, he contends that Bock cannot show prejudice.

Despite the mandatory language of the Texas Constitution and Rule 216, most courts have held the failure to timely pay the fee does not forfeit the right to a jury, unless some prejudice is shown. *Gen. Motors Corp. v. Gayle*, 951 S.W.2d 469, 476 (Tex. 1997)(collecting cases for proposition that "[e]ven where a party does not timely pay the jury fee, courts have held that a trial court should accord the right to jury trial if it can be done without interfering with the court's docket, delaying the trial, or injuring the opposing party."); *Dawson*, 627 S.W.2d at 446-47 ("In every case that has been cited by either party, there is a consensus that in spite of the mandatory language of Rule 216, the rule is construed as being discretionary with the judge."); *but see Roberts v. Mullen*, 446 S.W.2d 86, 90 (Tex.Civ.App.--Dallas 1969, writ ref'd n.r.e.)("[Rule 216] is plain and unambiguous . . . in the absence of any showing that he paid the required fee we cannot say that the trial court erred in denying him a jury trial."). When confronted with a late filed jury

15

demand or payment, the trial court retains the discretion to proceed with a jury or not. *Huddle v. Huddle*, 696 S.W.2d 895 (Tex. 1985).

Here, we reject Bock's jury fee argument for two reasons. First, it does not appear that the issue jury fee was ever raised below. "We must uphold a correct lower court judgment on any legal theory *before it*, even if the court gives an incorrect reason for its judgment." [Emphasis added]. *Guaranty County Mut. Ins. Co. v. Reyna,* 709 S.W.2d 647, 648 (Tex. 1986). But that does not mean we should affirm the trial court's order based on a legal theory *not presented to* the trial court and to which a party never had an opportunity to respond. *See Victoria Gardens of Frisco v. Walrath*, 257 S.W.3d 284, 290 (Tex.App.--Dallas 2008, pet. denied)(so holding). That would be particularly true here, where Richard could have easily cured the issue when the probate court rejected his jury trial request and set a bench trial.

On September 27, 2017, the probate court issued a non-jury setting for December 5, 2017. Richard then filed on October 9, 2017 a motion for continuance that expressly raised his jury demand. Bock filed a response claiming as a matter of substantive law that jury trials are not proper in trust modification proceedings; no mention of a jury fee was made. The probate court apparently heard the motion for continuance on October 18, 2017, and reset the case for January 24, 2018, but still as a bench trial. Had the jury fee issue been raised as an objection, Richard was well outside the thirty-day period of Rule 216 to pay the fee. Had he done so, the only issue then would have been whether the payment which could have been made more than ninety days form the date of trial, would have been made within a reasonable time, and if not, whether the probate court or Bock were prejudiced. Bock advances no argument which would support either of those propositions. We conclude the failure to pay the fee is not fatal to the issue.

**Standing**

16

Bock also urges that Richard was not entitled to a jury trial because he lacks any property interest in the trust. A trustee does not own the property that they manage. Rather, they are only vested with legal title and a right of possession on behalf of the beneficiary. *City of Mesquite v. Malouf*, 553 S.W.2d 639, 644 (Tex.Civ.App.--Texarkana 1977, writ ref'd n.r.e.). Without a valid property interest, Bock reasons that Richard has no protectable property interest that would give him procedural due process rights, such as the right to a jury. Bock relies on *Bank of Texas, N.A., Trustee v. Mexia*, 135 S.W.3d 356, 363 (Tex.App.--Dallas 2004, pet. denied) that holds the trustee of a "management trust" had no right to insist on a jury trial terminating the trust. However, the case is not controlling.

The trust in *Mexia* was established by the court to administer the proceeds of a settlement. *Id.* at 358. Under the applicable term of the Probate Code, the court had the right to amend, modify, or revoke the management trust at any time. *Id.* at 362. The relevant provision of the code also stated that it was is not necessary to give notice of probate proceedings, so service of citation on the trustee was not required. *Id.* And the lack of any property interest in the trust assets meant that due process arguments regarding citation, process, and a jury trial did not apply. *Id.* One stark difference here is that Bock did in fact serve and name Richard as a party. At that point, he at least had the rights that any litigant does under the Texas Rules of Civil Procedure and the Texas Constitution. TEX.PROP.CODE ANN. § 115.012 (all actions instituted under the code "are governed by the Texas Rules of Civil Procedure and the other statutes and rules that are applicable to civil actions generally."). And our rules and constitution generally afford litigants the right to a jury trial.[9] Having been made a party, the probate court could hardly ignore procedural protections afforded by the rules of civil procedure and the Texas Constitution.

---

[9] Bock also relies on *Ross v. Sims*, No. 03-16-00179-CV, 2017 WL 672458, at *6 (Tex.App.--Austin Feb. 15, 2017, pet. denied)(mem. op.). We read that case only to hold that there was no right to a jury trial because there were no

**Harmless Error**

"The wrongful denial of a jury trial is harmful when the case contains material fact questions." *Mercedes-Benz Credit Corp. v. Rhyne*, 925 S.W.2d 664, 667 (Tex. 1996). Bock, however, urges that the predicates for amending the trust were conclusively established such that any error in selecting the fact-finder would be harmless. And true enough, the refusal to grant a jury trial is harmless error if the record shows that there are no material issues of fact and an instructed verdict would have been justified. *Walter v. Walter*, 127 S.W.3d 396, 398 (Tex.App.--Dallas 2004, no pet.); *Olson v. Texas Commerce Bank*, 715 S.W.2d 764, 767 (Tex.App.--Houston [1st Dist.] 1986, writ ref'd n.r.e.). Our disagreement with Bock is that the questions of changed circumstances and impossibility of performance were at least disputed fact questions on this record.

At the time the trust was formed, Bock enjoyed a good working relationship with both Richard and Dick. But Bock and Richard are now opposing parties in other litigation. They had several disagreements over how certain trust expenditure issues should be handled. They are reduced to written communications monitored by their trial lawyers. It is far from an ideal situation. At the same time, Richard points out several issues over which they were able to reach agreement. He produced some evidence that the extent of the claimed delays were overstated. He produced evidence that some of the trust expenditures issues--such as any spending on alcohol or overpriced car insurance--were considerations that trustees might validly consider, and as here, resolve by themselves. Bock himself admitted that since July of 2017, despite some "stops and

---

ultimate issues of fact germane to the guardianship proceeding there were to be decided. The same can be said of *Texas State Bank v. Amaro*, 87 S.W.3d 538, 545 (Tex. 2002) that holds the disputed issue--the potential tort liability of the trustee--was not part of the accounting before the trial court and thus a jury was not necessary to resolve that question. By contrast, the two predicates for revising Troy's trust--changed circumstances and impossibility of performance--present triable fact questions that were before the probate court.

18

starts" Richard has tried to work with Bock to fulfill the purposes of the trust. We cannot say that an instructed verdict would be required for the probate court's key fact finding that because of "changed circumstances" since Dick's death, "the purposes of the Trust have become impossible to fulfill, and modification will further Trust purposes."[10]

We also reject the suggestion that Richard would need to bring a separate factual or legal insufficiency challenge to the probate court's finding of fact to urge his complaint about a jury trial. Bock suggests this requirement flows from *Walter v. Walter*, where a party complained about the denial of a jury trial on granting the divorce, but on appeal only raised property division issues to which there is no right to a jury trial. 127 S.W.3d at 398. The court held any error in denying a jury trial was harmless because "appellant appeals only issues where no material issues of fact existed." *Id*. As we explain above, that is not our case. Moreover, Richard's briefing sets out the conflicting facts that made the Section 112.054(a) predicates contestable issues of fact. To the extent that he needed to challenge the probate court's fact finding, his brief already sets out those arguments. See TEX.R.APP.P. 38.1(e)("The statement of an issue or point will be treated as covering every subsidiary question that is fairly included."); *Perry v. Cohen,* 272 S.W.3d 585, 587-88 (Tex. 2008)(declining to find waiver when appellant's issue did not specify a challenge to the trial court's interlocutory order granting special exceptions, but the arguments under the issue did). Disposing of appeals for harmless procedural defects is disfavored. *Verburgt v. Dorner,* 959 S.W.2d 615, 616 (Tex. 1997). We would place form over substance to require a litigant to formally bring a separate factual insufficiency challenge in order to preserve an objection to the denial of a

---

[10] We note that the probate court's finding number six has treated the first two predicates under Section 112.054 as a single ground, rather than the two distinct grounds as they appear in the statute. A trial court might order a change in a trust if "(1) the purposes of the trust . . . have become . . . impossible to fulfill or (2) because of circumstances not known to or anticipated by the settlor, the order will further the purposes of the trust[.]" TEX.PROP.CODE ANN. § 112.054. The changed circumstances do not necessarily have to make the purposes of the trust impossible to fulfill.

jury trial.  *Cf. Mesa Agro v. R. C. Dove & Sons*, 584 S.W.2d 506, 510 (Tex.Civ.App.--El Paso 1979, writ ref'd n.r.e.)(adopting construction of rule that "avoids an appellate trap . . . which may be set accidentally, unintentionally, and in good faith.").

We conclude that the trial court's refusal to grant a jury trial amounted to harmful error. Issue Two is sustained.

**The Probate Court's Remedy**

In his first issue, Richard attacks the several revisions to the trust found in the probate court's modification order.  Because we remand the case for a jury trial on the predicates necessary to support those modifications, any comment that we might make on the current modifications would be an advisory opinion.  The statute is clear as to the scope of possible modifications ("that the terms of the trust be modified, that the trustee be directed or permitted to do acts that are not authorized or that are forbidden by the terms of the trust, [or] that the trustee be prohibited from performing acts required by the terms of the trust") and it is equally clear as to the limitations on those modifications ("[t]he court shall exercise its discretion to order a modification" that "conforms as nearly as possible to the probable intention of the settlor.").  *Id*. at § 112.054(a),(b). To the extent that a proper fact-finder determines that changes need to be made, we are confident that the probate court will properly exercise its discretion.  Issue One is denied as moot, without regard to the merits.

**CONCLUSION**

The probate court's Order Modifying Trust of February 13, 2018 is set aside, and the cause remanded for proceedings not inconsistent with this opinion.

August 28, 2019

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Palafox, JJ.

20
