# In The

## *Court of Appeals*

## *Ninth District of Texas at Beaumont*

_____

## NO. 09-18-00358-CV
_____

**DARLENE ANN HOFFPAUIR, Appellant**

**V.**

**ROBERT P. CORMIER, ET AL, Appellees**

**On Appeal from the 60th District Court**
**Jefferson County, Texas**
**Trial Cause No. B-201,069-A**

## MEMORANDUM OPINION

Robert P. Cormier, individually, and Robert P. Cormier and David Olson, in their positions as co-trustees to the Paul J. Cormier Family Trust for the benefit of Robert P. Cormier and the Paul J. Cormier Family Trust GST Exempt for the benefit of Robert P. Cormier, filed a Petition for Modification of Trust Agreement.[1] Robert

---

[1] Because multiple individuals have the surname "Cormier," we refer to Robert P. Cormier, Paul J. Cormier, and Carlene Cormier by their first names. In the record, Robert is referred to alternatively as "Bobby."

1

sought to modify the terms of the trust agreement created by Paul Cormier on November 12, 1993, and each of the subtrusts created thereunder pursuant to Texas Property Code section 112.054(a). *See* Tex. Prop. Code Ann. § 112.054(a) (West Supp. 2018). Co-trustees of Trusts for the benefit of Carlene Cormier subsequently intervened seeking modification consistent with Robert's requested relief and sought a declaratory judgment to that effect. Following a hearing, the trial court granted the requested modification. Darlene Ann Hoffpauir, a beneficiary of the trusts, appeals the trial court's Order Directing the Modification of Trust Agreement. We affirm the trial court's Order Directing the Modification of Trust Agreement.

## Background

On November 12, 1993, Paul Cormier created the "Paul J. Cormier Family Trust." Paul established the trust for the benefit of his three children, Carlene Ann Swensen, Darlene Ann LeFleur (Hoffpauir), and Robert P. Cormier. Paul named Robert and W.T. Edgar co-trustees. The original trust agreement divided the initial Trust Estate into three equal shares, "one for the benefit of each Beneficiary." The terms of the original trust agreement provided that ten years after the end of the month in which Paul died, the principal and income of the trust should be delivered to the beneficiaries. Paul died on October 30, 2009, and thereafter, additional assets were added to the corpus of the Trust and the Trust Estate was split into six separate

subtrusts for tax purposes in satisfaction of the trust terms. These subtrusts are as follows:

1. Paul J. Cormier Family Trust fbo Robert P. Cormier;

2. Paul J. Cormier GST Exempt fbo Robert P. Cormier;

3. Paul J. Cormier Family Trust fbo Carlene A. Cormier;

4. Paul J. Cormier GST Exempt fbo Carlene A. Cormier;

5. Paul J. Cormier Family Trust fbo Darlene Hoffpauir; and

6. Paul J. Cormier GST Exempt fbo Darlene Hoffpauir.

In their Petition for Modification of Trust Agreement, Appellees contended there were two specific and material purposes of the Trust. First, they argued that the Grantor created the trust to provide spendthrift and creditor protection for the trust estate. They point out that those provisions are designed to ensure the assets held by the Trustees are safeguarded from creditor claims and are available to provide for the support, maintenance, medical care, education and welfare of the primary beneficiaries, initially being the Grantor's children.

Second, Appellees argued that the Grantor created the Trust, and in particular directed an extended ten-year term for the Trust after death of the Grantor, for the purpose of continuing business operations and the management of the Trust's real estate investments. Specifically addressing the issue of the need for a period of

3

continued joint management after Grantor's death, Appellees pointed to Section 2.2 of the Trust Agreement providing that "[t]en years after the end of the month in which the Grantor dies[,] the Trustee shall convey and deliver to any child of Grantor then living the principal and accumulated income of his trust."[2] Appellees also asserted in their Petition that the same section of the Trust Agreement further provides specific instructions and language describing the overriding intent of the Grantor:

> It is the desire of the Grantor that a child who receives distribution of his trust hereunder continue to operate any business being operated by the Trustee prior to termination, with respect to business assets thus distributed, as a partner in partnership with the Trustee and/or with his brother and sisters, or in such other form as may be appropriate for the operation of such business enterprise. Grantor has devoted a great deal of effort in establishing business enterprises and accumulated assets therefor during his lifetime and such business enterprises have supported the family well. It is the hope of Grantor that the trustee can carry on such business enterprises and that after the termination of all trusts herein created the descendant of Grantor can continue to carry on such business enterprises for their mutual benefit and profit.

Thus, Appellees contended in their Petition for Modification of the Trust Agreement that the Grantor anticipated the need for an extended period of joint cooperation and management of the Trust's investment assets and each of the other trusts created under the Trust Agreement for the benefit of his children. Appellees asserted that the

---

[2] The parties refer to this as the Termination Date.

Grantor assumed a period of ten years would be needed to substantially complete the management and liquidation of the Trust estate and the Trust terms of Section 2.2 reflect this assumption. Appellees also pointed out that unless modified by the Court, the Trust was scheduled to terminate on October 31, 2019, and substantial loss would be incurred by the corpus of the trust.

The Appellees argued in their Petition that unanticipated circumstances necessitated the modification. Specifically, they pointed to a number of property interests it held as Cow Bayou Holdings LLC and Cormier Family Partnership and argued that liquidating those assets required management and could not be profitably sold under current market conditions. Appellees also argued that if the Trust terminated on October 31, 2019, it would create a severe hardship on Robert and Carlene, because Robert had significant business interests apart from the Trust to attend to and Carlene had limited real estate management experience. Finally, Appellees contended that Hoffpauir was adjudged partially incapacitated and subject to a guardianship of her estate to protect her financial assets. Therefore, any assets distributed to either trust for the benefit of Hoffpauir would be subject to dependent administration likewise creating a hardship on the court and her guardian. According to Appellees, those circumstances would significantly increase costs and expenses, causing a waste of resources which would negatively impact all three primary

5

beneficiaries and could not have been foreseen by Paul when he created the Trust Agreement in 1993.[3]

The co-trustees of the Paul J. Cormier Family Trust for the benefit of Carlene Cormier and the Paul J. Cormier Family Trust GST Exempt for the benefit of Carlene Cormier subsequently intervened. They desired to exercise joint management of the assets, property, and business interests. They asserted that Robert retained management of the limited liability company and family limited partnership as opposed to all six co-trustees participating in the management. They desired physical separation of the Trust and Trust assets but contended the current corporate trust structure did not allow for joint management and that "[m]odifying and extending the Trust further solidifies the need for a physical separation of the three (3) Trusts and their assets." The Intervenors sought a declaratory judgment pursuant to Texas Civil Practices and Remedies Code section 37.005 to determine:

> (a) [w]hether the purposes of the Trust and the requirements of the Texas Property Code are best met, whether provisions of the Trust require modifications of the Trust so that Plaintiffs may participate in the management of the trust businesses and have a separate and distinct

---

[3] In a separate proceeding, we affirmed a jury's determination that (a) Hoffpauir lacks the capacity to handle business, managerial, and financial affairs, (b) it is in Hoffpauir's best interest that the court appoint a guardian, and (c) Hoffpauir's property would be protected by such an appointment. *See In re Guardianship of Hoffpauir*, No. 09-16-00152-CV, 2018 WL 1321509, at *1 (Tex. App.—Beaumont Mar. 15, 2018, pet. denied) (mem. op.).

trust, for Carlene Cormier, with separate and distinctive assets for that Trust; [and]

(b) whether modification of the Trust is appropriate as described in [Appellees'] petition; Intervenors specifically assert[ed] that they consent to the action requested by [Appellees] and reserve[d] the right to take such action as it relates to Carlene Cormier's Trust, but doing so at the same time as Trust assets are truly separated in three (3) distinctive trusts[.]

*See* Tex. Civ. Prac. & Rem. Code Ann. § 37.005 (West 2015). They also sought a declaration that the six Trusts are separate and that the terms of the Trusts be extended for at least 25 years. They also sought to have Hoffpauir named as an interested party to the proceedings. *See id.*

The co-trustees of Hoffpauir's Trust answered; however, the trial court appointed an attorney ad litem to represent Hoffpauir. Despite the ad litem's appointment, Hoffpauir filed a pro se answer asserting a general denial. Hoffpauir also filed a pro se intervention complaining that Robert acted unlawfully as Trustee and prevented her from having representation. Hoffpauir's pro se pleading accuses multiple parties, institutions, and courts of collusion and other unlawful conduct. The ad litem for Hoffpauir filed a brief on her behalf opposing the modification of the trust agreement. After a hearing, the trial court granted the modification. Specifically, the trial court ordered that section 2.2 of the Trust Agreement be modified to read as follows:

*2.2 Distribution to Beneficiaries. Thirty five (35) years after the end of the month in which the Grantor dies the Trustee shall convey and deliver to any descendant of Grantor then living the principal and accumulated income of his trust or subtrust. It is the desire of the Grantor that a descendant who receives distribution of his or her trust hereunder continue to operate any business being operated by the Trustee prior to termination, with respect to business assets thus distributed, as a partner in partnership with the Trustee and/or other family members, or in such other form as may be appropriate for the operation of such business enterprise. Grantor has devoted a great deal of effort in establishing business enterprises and accumulated assets therefor during his lifetime and such business enterprises have supported the family well. It is the hope of Grantor that the Trustee can carry on such business enterprises and that after the termination of all such trusts herein created, the descendants of Grantor can continue to carry on such business enterprises for their mutual benefit and profit.*

*Trustee shall convey and deliver to any beneficiary other than a child of Grantor his proportionate share of the Trust Estate, including any undistributed income when such beneficiary has become 35 years of age and thirty five (35) years have elapsed after the end of the month in which the Grantor dies, whichever event shall last occur.*

*All references in this Trust Agreement to the "trust term" "prior to termination" or "termination of the trust" or similar phrases shall refer to the trust term as reflected in this Section 2.2, as modified, being the date on which the beneficiary has become 35 years of age and thirty five (35) years have elapsed after the end of the month in which the Grantor dies, whichever event shall last occur.*

Hoffpauir timely filed a pro se appeal of the trial court's Order Directing the Modification of Trust Agreement.[4] Hoffpauir did not request preparation of the reporter's record of the hearing. Hoffpauir's appellate brief makes clear that she

---

[4] The trial court severed the Order Directing the Modification of the Trust Agreement, making it a final appealable order.

8

challenges the trial court's modification of the Trust Agreement extending the termination deadline from ten years after Paul's death to thirty-five years after Paul's death. However, we are unable to identify any specific issues forming the basis of her appeal.

## Standard of Review

We review an order modifying the terms of a trust under an abuse of discretion standard. *See* Tex. Prop. Code Ann. § 112.054(b) (West Supp. 2018) ("The court shall exercise its discretion to order a modification[.]"); *see also In re Willa Peters Hubberd Testamentary Trust*, 432 S.W.3d 358, 365 (Tex. App.—San Antonio 2014, no pet.) (citing *Conte v. Ditta*, 312 S.W.3d 951, 961 (Tex. App.—Houston [1st Dist.] 2010, no pet.); *Swantner-Carter v. Frost Nat'l Bank*, No. 13-06-00545-CV, 2008 WL 3521253, at *4 (Tex. App.—Corpus Christi Aug. 7, 2008, no pet.) (mem. op.)). A court that acts unreasonably, arbitrarily or without reference to guiding rules or principles abuses its discretion. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

## Analysis

"The appellate record consists of the clerk's record and, if necessary to the appeal, the reporter's record." Tex. R. App. P. 34.1. The court reporter is responsible for timely filing the reporter's record if: (1) a notice of appeal has been filed; (2) an

9

appellant requests that the reporter's record be prepared; and (3) the party responsible for paying for the preparation of the reporter's record has paid the fee or made satisfactory arrangements with the reporter to pay the fee. Tex. R. App. P. 35.3(b). While trial courts and appellate courts are jointly responsible for ensuring the appellate record is timely filed, this duty does not arise until an appellant properly requests and pays for the record. *See Aguero v. Aguero*, 225 S.W.3d 236, 237 (Tex. App.—El Paso 2006, no pet.) (citing *Kent v. State*, 982 S.W.2d 639, 640–41 (Tex. App.—Amarillo 1998, pet. ref'd, untimely filed)). "[T]he appellant bears the burden to supply this Court with a complete record demonstrating the trial court abused its discretion." *Crown Asset Mgmt., L.L.C. v. Castro*, No. 05-07-01305-CV, 2008 WL 3272169, at *1 (Tex. App.—Dallas Aug. 11, 2008, no pet.) (mem. op.) (citing Tex. R. App. P. 34.5(b); *Watkins v. Jones*, 192 S.W.3d 672, 674 (Tex. App.—Corpus Christi 2006, orig. proceeding); *Univ. of Tex. at Austin v. Hinton*, 822 S.W.2d 197, 202 (Tex. App.—Austin 1991, no writ)); *see also Christiansen v. Prezelski*, 782 S.W.2d 842, 843 (Tex. 1990) (discussing Tex. R. App. P. 53(d) and noting "[t]he burden is on the appellant to see that a sufficient record is presented requiring reversal"). When an appellant's appeal involves matters omitted from the record, its actions prevent us from adequately addressing the dispute. *See Crown Asset Mgmt., L.L.C.*, 2008 WL 3272169, at *2 (citations omitted).

10

Appellate courts generally presume pretrial hearings are non-evidentiary and that the trial court only considered evidence filed with the clerk. *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 783 (Tex. 2005). However, if the proceeding's nature, the trial court's order, the parties' briefs, or other indications show that an evidentiary hearing took place, then the complaining party must present a record of the hearing to establish harmful error. *Id.* Here, there are multiple indicators the trial court conducted an evidentiary hearing on the modification of the trust agreement. First, Hoffpauir's pro se brief complains about a witness's testimony "on the witness stand[.]" Second, Appellees' brief mentions that the trial court conducted a hearing "where the Trial Court heard evidence[.]" Third, the trial court's order notes it based its findings "upon the Petition, the testimony, the evidence presented, and the arguments of counsel[.]" Finally, an order granting the ad litem's motion for continuance and resetting the hearing mandated that the attorneys for the parties and the ad litem appear on the date noted and "present any testimony, arguments or authorities appropriate for the Court to rule on the requested modification[.]" All of these indicators in the clerk's record and briefing lead us to conclude the trial court conducted an evidentiary hearing on the petition for modification. *See id.*

When a party fails to make the reporter's record part of the appellate record, we presume sufficient evidence was presented to support the trial court's finding and judgment. *See Curry v. Tex. Dep't Pub. Safety*, 472 S.W.3d 346, 350 (Tex. App.—Houston [1st Dist.] 2015, no pet.) *(citing Bryant v. United Shortline Inc. Assur. Servs., N.A.*, 972 S.W.2d 26, 31 (Tex. 1998); *Willms v. Ams. Tire Co.*, 190 S.W.3d 796, 803 (Tex. App.—Dallas 2006, pet. denied)); *Green v. Grocers Supply Co.,* 533 S.W.3d 376, 379 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (citations omitted). Here, Hoffpauir complains of the trial court's order allowing for modification of the trust agreement following an evidentiary hearing, but she has failed to present us with the reporter's record of the hearing. Therefore, we presume the trial court properly conducted the hearing on July 17, 2018, and sufficient evidence was presented for the trial court to make all necessary findings. *See Bennett v. Cochran*, 96 S.W.3d 227, 230 (Tex. 2002) ("The court of appeals was correct in holding that, absent a complete record on appeal, it must presume the omitted items supported the trial court's judgment.") (quoting *Gallagher v. Fire Ins. Exchange*, 950 S.W.2d 370, 371 (Tex. 1997)).

## Conclusion

In this appeal, Hoffpauir had the burden to show that the trial court abused its discretion when it entered the Order Directing Modification of Trust Agreement.

12

That responsibility consisted of providing this Court an adequate record on appeal and necessarily included the reporter's record of the evidentiary hearing. Because Hoffpauir failed to provide the appellate court with the reporter's record of the trial court's evidentiary hearing below, we presume sufficient evidence existed to support the trial court's findings and judgment. We affirm the trial court's judgment.

AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on August 21, 2019
Opinion Delivered September 19, 2019

Before McKeithen, C.J., Kreger and Horton, JJ.