

# Fourth Court of Appeals

## San Antonio, Texas

## OPINION

No. 04-13-00452-CV

**IN RE WILLA PETERS HUBBERD TESTAMENTARY TRUST**

From the Probate Court No. 2, Bexar County, Texas
Trial Court No. 1986-PC-1440
Honorable Tom Rickhoff, Judge Presiding

Opinion by:     Catherine Stone, Chief Justice

Sitting:         Catherine Stone, Chief Justice
                 Marialyn Barnard, Justice
                 Patricia O. Alvarez, Justice

Delivered and Filed:  February 12, 2014

AFFIRMED IN PART; REVERSED AND RENDERED IN PART

This appeal arises from disputes regarding a testamentary trust established by Willa Peters

Hubberd. Willa's daughter, Mary Dahlman, is a beneficiary under the trust. Dahlman appeals the

probate court's orders modifying the terms of the testamentary trust based on a mediated settlement

agreement signed by all of the parties to the underlying cause and their attorneys.[1] On appeal,

Dahlman contends: (1) the probate court lacked jurisdiction to enter the order; (2) the

modifications or amendments to the trust were inconsistent with the purposes of the trust; and (3)

the probate court should have awarded sanctions because the petition was groundless and filed in

---

[1] The probate court signed the first order on June 12, 2013, and the second order on July 19, 2013. The second order states that it was entered due to a question that was raised with regard to the probate court's jurisdiction to enter the first order based on a pending appeal. The second order states that it "ratifies and affirms" the prior order; however, with regard to the modification to the trust, the second order states that it "amends and supersedes" the prior order.

bad faith. In addition to asserting that the probate court's order should be affirmed, one of the appellees, A. Chris Heinrichs,[2] requests that this court impose sanctions against Dahlman for filing a frivolous appeal.

## BACKGROUND

In 1986, Willa established the Peters Family Trust to which she conveyed certain mineral interests. Under the terms of Willa's will, the remainder of her estate was devised to the Willa Peters Hubberd Testamentary Trust.[3] Frost National Bank is the current trustee of the Peters Family Trust, and Falcon International Bank is the current trustee of the Hubberd Trust.

Dahlman and Willa's son, Lantz Hubberd, were named as the income beneficiaries of the Hubberd Trust. The trustee was directed to pay "the entire net income from the trust estate" to Dahlman and Lantz in equal shares and in convenient monthly or quarterly installments. The trustee also had the discretion to distribute trust principal for the health, support, education, and maintenance of Dahlman, Lantz, or their issue. When Lantz died in October of 2012, his son, Michael, became the second income beneficiary in Lantz's stead. Upon Dahlman's death, the Hubberd Trust will terminate, and the principal and all undistributed income will be distributed to the four grandchildren in equal shares.[4] The Peters Family Trust distributes mineral income to the Hubberd Trust from which a depreciation allowance is deducted before that income is distributed to the income beneficiaries.

A dispute between the beneficiaries resulted in litigation regarding the depreciation allowance applicable to the mineral income distributions.[5] Falcon International Bank was also

---

[2] Heinrichs was the mediator instrumental in obtaining the mediated settlement agreement and is referred to in this opinion as the mediator.

[3] This is the title used in the parties' mediated settlement agreement. Willa's will actually refers to the trust as the Hubberd Trust.

[4] The other three grandchildren are Dahlman's three daughters, Willa Yturri Graff, Frances Yturri, and Mary Sandra Yturri.

[5] This dispute was on-going at the time of Lantz's death, and his estate became a party to the litigation upon his death.

sued as trustee. During the course of the litigation, the probate judge ordered an investigation into Dahlman's competence, resulting in a guardianship application being filed and further litigation. This litigation included an appeal and original proceedings being filed in this court. In February of 2013, the probate court ordered the parties to mediate their disputes. At the conclusion of a two-day mediation held in May of 2013, all of the parties and their attorneys signed a mediated settlement agreement.

At the request of at least one of the beneficiaries of the Hubberd Trust, the mediator filed a petition to modify the terms of the trust in accordance with the terms of the mediated settlement agreement. Falcon International Bank also filed a motion to approve the mediated settlement agreement. Dahlman filed an answer and counterclaims against the mediator, her daughters, and their attorneys. Three hearings were held on the petition. At the first and second hearings, Dahlman's attorney announced "not ready" and noted Dahlman's opposition to modifying the trust. After confirming that all of the parties and their attorneys had signed the mediated settlement agreement, the probate court approved the agreement and ordered the modifications to the trust requested in the petition. Dahlman subsequently non-suited her counterclaims.

## MEDIATOR'S STANDING TO FILE PETITION

In her first issue on appeal, Dahlman contends the probate court lacked jurisdiction to order the modifications to the trust because the mediator lacked standing to file the petition.[6] Dahlman relies on section 112.054(a) of the Texas Trust Code which authorizes a court to order that the terms of the trust be modified on the petition of a trustee or a beneficiary. TEX. PROP. CODE ANN. § 112.054(a) (West 2007).

---

[6] In the brief filed by the mediator, he makes reference to the probate court's jurisdiction over the cause; however, the mediator's standing is a different issue than the probate court's jurisdiction over the cause.

*A.      Waiver and Standard of Review*

In its brief, Falcon International Bank raises the issue of waiver, contending Dahlman had to plead the mediator's lack of capacity as an affirmative defense.  Standing, however, is a component of subject matter jurisdiction, may be raised for the first time on appeal, and may not be waived by the parties. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443-44 (Tex. 1993); *Martinez v. Estrada*, 392 S.W.3d 261, 263 (Tex. App.—San Antonio 2012, pet. filed). Moreover, in this case, Dahlman asserted that the mediator lacked standing as a plea to the jurisdiction in her answer.

Whether a court has subject matter jurisdiction is an issue of law, which is reviewed de novo. *Tex. Dept. of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *Martinez*, 392 S.W.3d at 263.  A party's standing is determined at the time suit is filed. *Tex. Ass'n of Bus.*, 852 S.W.2d at 446 n.9; *Prize Energy Res., L.P. v. Cliff Hoskins, Inc.*, 345 S.W.3d 537, 550 (Tex. App.—San Antonio 2011, no pet.).  "In determining standing, we look to the facts alleged in the petition, but may consider other evidence in the record if necessary to resolve the question of standing." *Prize Energy Res., L.P.*, 345 S.W.3d at 550 (citing *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000)).

*B.      Mediator as Agent of Beneficiaries*

In his petition, the mediator sought to amend and modify the provisions of the Hubberd Trust to incorporate the provisions of the mediated settlement agreement based on the following agreement of the trustee and beneficiaries:

> The parties will have prepared and cooperate in filing and securing a judgment modifying the Hubberd Trust in order to reflect the agreements to the administration of the Hubberd Trust as set out herein as provided by Texas Trust Code Section 112.054.

Dahlman contends that because the face of the petition did not disclose that the mediator was acting as a representative of the beneficiaries, the mediator lacked standing. As previously noted, however, we must consider not only the pleadings, but also other evidence in the record if necessary to resolve the question of standing. *Bland Indep. Sch. Dist.*, 34 S.W.3d at 555; *Prize Energy Res., L.P.*, 345 S.W.3d at 550.

In this case, the reporter's record from the second hearing on the petition contains the mediator's statement that he was asked to prepare and file the petition by the attorneys for various beneficiaries and the attorney representing Dahlman in the trust litigation.[7] *See Banda v. Garcia*, 955 S.W.3d 270, 272 (Tex. 1997) (attorney's statements constitute evidence where statements put party on notice that attorney is attempting to prove a factual matter). The attorney for one of the grandchildren, Willa Graff, also stated that the beneficiaries had given the mediator permission to file the petition on their behalf, and subsequently filed an affidavit confirming that he requested the mediator to file the petition on behalf of his client. Similarly, the attorney for Falcon International Bank expressed his shock that Dahlman had filed counterclaims against the mediator for "doing what the parties asked him to do."

Under Rule 7 of the Texas Rules of Civil Procedure, any party to a suit may appear in person or by an attorney of the court. TEX. R. CIV. P. 7. Because the mediator was an attorney who was authorized to represent the beneficiaries and the trustee in filing the petition, he had standing to file the petition.[8]

---

[7] Dahlman was represented in the guardianship litigation by a different attorney than the attorney representing her in the trust litigation.

[8] Dahlman contends that a conflict of interest arose when the petition was filed over her objection. The alleged conflict of interest does not affect our standing analysis, and we question whether a conflict of interest could exist when the evidence in the record established that one of Dahlman's attorneys also authorized the mediator to file the petition on Dahlman's behalf.

**MODIFICATIONS TO THE TRUST**

In her second issue, Dahlman asserts the probate court erred in ordering the modifications because: (1) the order is inconsistent with a material purpose of the trust and she did not consent to the modification; (2) the order modifies the trust in a manner that does not conform with Willa's probable intention as settlor; and (3) one of the modifications was not contained in the mediated settlement agreement.

*A.      Modifications in Question*

The mediated settlement agreement requires both Dahlman and Michael to maintain health and general liability insurance, authorizes the trustee to pay the premiums for such insurance out of their share of the net income of the trust, and further provides for the withholding of income distributions to both if they fail to provide proof of their compliance to the trustee's satisfaction. With regard to the general liability insurance, the following language in the petition is consistent with the mediated settlement agreement:

> The Trustee shall pay out of Mary Hubberd Dahlman's share of the income of the Trust the premiums on general liability insurance in a minimum amount of $1 million. If Mary Hubberd Dahlman, for any reason, does not possess such insurance, she or the Trustee shall obtain such insurance as might be available and the Trustee shall pay such premiums out of Mary Hubberd Dahlman's share of the income of the Trust. If Mary Hubberd Dahlman does not provide proof to the satisfaction of the Trustee that she is in compliance with this provision, trust income distributions shall be withheld until she becomes compliant with such provision.[9]

With regard to health insurance, the following language in the petition is consistent with the mediated settlement agreement:

> Michael Hubberd has health insurance through his employer. Michael Hubberd shall provide proof of such insurance to the Trustee on an annual basis. If at any time Michael Hubberd does not have his own health insurance coverage through his employer or otherwise, he shall obtain such other health insurance as might be available and the Trustee shall pay such premiums out of Michael Hubberd's share of the income of the Trust. If Michael Hubberd does not provide proof to the

---

[9] An identical provision is also included for Michael Hubberd.

satisfaction of the Trustee that he is in compliance with this provision, trust income distributions shall be withheld until he becomes compliant with such provision.

The following language in the petition with regard to Dahlman maintaining health insurance is consistent with the mediated settlement agreement:

> Mary Hubberd Dahlman shall apply for Medicare and a Medicare Supplemental Insurance policy. To the extent that there are premium payments on any such health insurance, the Trustee shall pay such premiums out of Mary Hubberd Dahlman's share of the net income of the Trust. If Mary Hubberd Dahlman is unsuccessful, for any reason, in obtaining such insurance, she shall obtain such other health insurance as might be available and the Trustee shall pay such premiums out of Mary Hubberd Dahlman's share of the income of the Trust. If Mary Hubberd Dahlman does not provide proof to the satisfaction of the Trustee that she is in compliance with this provision, trust income distributions shall be withheld until she becomes compliant with such provision.

Absent from the mediated settlement agreement, however, is the following language which was included in the petition but only as to Dahlman:

> Provided, however, this provision shall not become applicable until after Mary Hubberd Dahlman acquires her Medicare and a Medicare Supplemental Insurance policy. Until that time, Mary Hubberd Dahlman shall not request any distribution of principal from the Trust for health or medical reasons.

Arguably, the probate court could modify the terms of the trust even absent the mediated settlement agreement so long as the modification was in compliance with Section 112.054; therefore, the absence of the foregoing provision in the mediated settlement agreement did not preclude the probate court from making the modification if it complied with Section 112.054.

### B.     *Permissible Modifications under Section 112.054*

Dahlman focuses on Subsection 112.054(d) of the Trust Code which prohibits a court from taking the action permitted by Subsection 112.054(a)(5) unless all of the beneficiaries "have consented to the order or are deemed to have consented to the order." TEX. PROP. CODE ANN. § 112.054(d) (West 2007). Subsection 112.054(a)(5) authorizes a court to order that the terms of a trust be modified if "the order is not inconsistent with a material purpose of the trust." *Id*. at

§ 112.054(a)(5)(B).  Dahlman also cites Subsection 112.054(b) which states, "The court shall exercise its discretion to order a modification or termination under Subsection (a) in the manner that conforms as nearly as possible to the probable intention of the settlor."  *Id*. at § 112.054(b).

Although Dahlman focuses on Subsection 112.054(d), the petition to modify requested the modifications pursuant to Subsections 112.054(a)(2) and (a)(3) of the Code.  Under these subsections, the court is authorized to modify the terms of the trust if: (1) "because of circumstances not known to or anticipated by the settlor, the order will further the purposes of the trust;" or (2) "modification of administrative, nondispositive terms of the trust is necessary or appropriate to prevent waste or avoid impairment of the trust's administration."  *Id*. at §§ 112.054(a)(2)-(3).

This court has previously noted that the 2005 amendment to subsection (a)(2) "liberalized the rules governing" the modification of trusts.  *In re White Intervivos Trusts*, 248 S.W.3d 340, 342 (Tex. App.—San Antonio 2007, no pet.) (internal quotation omitted).  The new law authorized modifications "that enhance the attainment of the settlor's trust purposes."  *Id*.  As another court phrased it, "The court is permitted to modify the terms of a trust if, due to circumstances not known to or anticipated by the settlor, compliance with the terms of the trust would defeat or substantially impair accomplishment of the purposes of the trust."  *Conte v. Ditta*, 312 S.W.3d 951, 959 (Tex. App.—Houston [1st Dist.] 2010, no pet.).

### C.    *Standard of Review*

We review a probate court's order modifying the terms of a trust under an abuse of discretion standard.  *See Conte*, 312 S.W.3d at 961 (holding trial court abused its discretion in modifying terms of trust); *Swantner-Carter v. Frost Nat'l Bank*, No. 13-06-00545-CV, 2008 WL 3521253, at *4 (Tex. App.—Corpus Christi Aug. 7, 2008, no pet.) (stating modification of trust reviewed for abuse of discretion) (mem. op.); TEX. PROP. CODE ANN. § 112.054(b) (West 2007)

(stating "court shall exercise its discretion to order a modification of termination under Subsection (a)). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner, or without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985).

> D.    *Purposes of the Trust*

In order to determine whether the modifications of the terms of the trust were permissible under section 112.054, we must first determine the purpose or purposes of the trust. Dahlman contends that the purposes of the trust are: (1) to unconditionally distribute all income to the income beneficiaries; and (2) to distribute principal as necessary to provide adequately for the health, support, education, or maintenance of Dahlman and the four grandchildren. The appellees note that the trust contains a spendthrift provision which indicates an intent to protect the principal of the trust. The appellees further note that Subsection 112.054(b) expressly states, "The court shall consider spendthrift provisions as a factor in making its decision" regarding whether a modification "conforms as nearly as possible to the probable intention of the settlor." TEX. PROP. CODE ANN. § 112.054(b) (West 2007).

In *Frost Nat'l Bank of San Antonio v. Newton*, the court considered a trust which, similar to the trust in the instant case, appeared to have a dual purpose. 554 S.W.2d 149 (Tex. 1977). In *Newton*, the trust arose from a will and was to terminate on the death of the last of the following three named beneficiaries, Rexford S. Cozby, Karolen Newton, and Louise Purvis; provided, however, the trustee had "the right, at its option, to sooner terminate said Trust in the event the income from the trust property [ceased] to be sufficient in amount to justify the continuance of the trust." *Id*. at 151. Because Cozby, the testatrix's husband, predeceased her, the income of the trust (plus such portions of the principal as the trustee deemed necessary) was to be used to pay for the support and education through college of the testatrix's great-nephew and two great-nieces. *Id*. In

the event the net income of the trust was more than was needed to pay for the support and college education of the foregoing, the excess amount would be paid in equal shares to Purvis and Newton. *Id* at 152. Upon the final termination of the trust, the property was to be distributed in equal shares to Purvis and Newton or, if either was not living, their share would go to their then living children. *Id*.

After the last of the beneficiaries entitled to the educational benefits graduated from college in 1971, the trustee brought a declaratory judgment action to determine whether the trust should be terminated or should remain in effect until the last to survive of Purvis or Newton. *Id*. Purvis, Newton, and their children entered into an agreement requesting that the trust be terminated because the primary purposes of the trust had been accomplished. *Id.* at 153. The trustee and the guardian ad litem for the unborn and unadopted children of Newton and Purvis asserted that "the primary purposes of the trust have not been fulfilled because the provision for the payment of excess income to [Newton and Purvis] is not incidental and is a continuing obligation of the Bank as trustee." *Id*. The trial court found "the trust estate was sufficient in amount to justify its continuation," but nonetheless ordered the trust terminated because "its primary purposes had been accomplished and fulfilled." *Id*. The intermediate appellate court affirmed. *Id.*

On appeal to the Texas Supreme Court, the court first noted that none of the parties contended that the will was ambiguous. *Id*. Therefore, the court asserted the "true meaning of the will must be determined by construing the language used within the four corners of the instrument." *Newton*, 554 S.W.2d at 153. "No speculation or conjecture regarding the intent of the testatrix is permissible where, as here, the will is unambiguous, and we must construe the will based on the express language used therein." *Id*.

With regard to the beneficiaries' argument that payment of the excess income to Newton and Purvis was merely an "incidental" purpose of the trust, the court asserted:

> To accept such a contention would require a determination of what the testatrix considered to be the principal purposes of the trust and what she considered only incidental. Such a determination would take the court beyond the express language of the will into the realm of conjecture and speculation, for it is by no means clear that the provision for excess income distribution was merely an incidental purpose of the testatrix. … Absent an express declaration of purpose in the instrument, a court cannot go beyond the face of the will to make an ad hoc and speculative assessment of which purposes the trustor or testator considered 'primary' and which he considered merely 'incidental.'

*Id*. at 154. The court then held that the trust could not be judicially terminated on the ground that the trust's primary purpose had been accomplished when the trust expressly provided for its termination upon a specified event. *Id*. Finally, with regard to the effect of the beneficiaries' agreement, the court noted "the better rule of law is that beneficiaries of a trust can consent to its termination only where all purposes of the trust have been accomplished." *Id*.

Having reviewed the unambiguous language of Willa's will, we conclude that the trust has two purposes: (1) to distribute the "entire net income" from the trust to Dahlman and Michael; and (2) to provide for the health, support, education, and maintenance of Dahlman and the four grandchildren through distributions of trust principal. The inclusion of the spendthrift provision is an indication that Willa wanted to preserve the trust assets and prevent actions taken by the beneficiaries from depleting those assets. Based on the holding in *Newton*, however, we must consider both purposes as having equal importance in determining whether compliance with the terms of the trust would defeat or substantially impair those purposes based on a circumstance not anticipated by Willa. *See Conte*, 312 S.W.3d at 959.

*1.      Maintenance of Insurance*

Dahlman argues that Willa could have conditioned the distribution of income and principal on her maintenance of health and general liability insurance because such insurance existed at the time Willa created the trust and, thus was a circumstance known to her. This argument ignores that Willa also would have needed to anticipate that Dahlman would forego the maintenance of

such insurance.  We conclude that Dahlman's refusal to obtain health and liability insurance is a circumstance that was not anticipated by Willa, and requiring the maintenance of such insurance would further or enhance the attainment of the purpose of the trust to provide for the health, support, education, and maintenance of Dahlman and the grandchildren.  *See In re White Intervivos Trusts*, 248 S.W.3d at 342.  Stated differently, Dahlman's failure to maintain such insurance would substantially impair the accomplishment of the purpose to provide for the health, support, education, and maintenance of Dahlman and the grandchildren.  *See Conte*, 312 S.W.3d at 959.  Accordingly, the probate court did not abuse its discretion in modifying the trust to require the maintenance of the insurance based on Subsection 112.054(a)(2).

> 2.      *Payment of Premiums and Withholding of Distributions*

Requiring that the premiums for the insurance be paid from the trust income would further the purpose of the trust to provide for the health, support, education, and maintenance of the grandchildren by preserving the trust principal; however, it would not further the purpose of distributing the "entire net income" from the trust to Dahlman and Michael.  Similarly, withholding principal distributions until the insurance is obtained would further the purpose of the trust to provide for the health, support, education, and maintenance of the grandchildren by preserving the trust principal; however, it would not further the purpose of providing for Dahlman's health, support, education, and maintenance.  Because *Newton* precludes us from elevating one purpose over another, the payment of the premiums from the trust income and the withholding of distributions from principal cannot be upheld under Subsection 112.054(a)(2).  Moreover, withholding the income distributions would not further any purpose since the distribution of the income does not affect the principal of the trust and withholding the income would be contrary to the purpose of distributing the "entire net income" from the trust.  Accordingly, neither requiring

that the premium payments be paid from the trust income nor the withholding of distributions of income or principal are authorized by Subsection 112.054(a)(2).

The withholding of income distributions and the restrictions on requesting principal distributions would prevent waste to the trust principal by imposing penalties for the failure to obtain the requisite insurance. Similarly, requiring that the premium payments be paid from trust income would prevent waste of the trust principal. However, the trust provisions pertaining to the distribution of the "entire net income" and principal are dispositive terms, as opposed to "administrative, nondispositive" terms. Therefore, these modifications are not authorized by Subsection 112.054(a)(3).

Finally, although all of the parties agreed to the modifications as required by Subsection (d), withholding principal and income distributions and requiring that the premiums be paid from trust income are "inconsistent with a material purpose of the trust." Therefore, these modifications are not authorized by Subsection 112.054(a)(5)(B).

Because the modifications of the trust requiring premiums to be paid from trust income and permitting the withholding of distributions of income and principal are not authorized by Section 112.054, the probate court abused its discretion in granting the portions of the petition seeking these modifications.

### E.    Estoppel by Benefits Accepted

The enforcement of the mediated settlement agreement is a separate issue from whether the probate court had the authority to modify the terms of the trust. Although Dahlman could be estopped from defending against the enforcement of the mediated settlement agreement based on her acceptance of benefits thereunder, whether the court was authorized to modify the terms of the trust to incorporate the parties' agreement is a separate issue which is governed by section 112.054.

The cases cited by Falcon International Bank address a party being precluded from challenging a judgment if the party accepted benefits under the judgment. *See Smith v. Texas Commerce Bank-Corpus Christi, N.A.*, 822 S.W.2d 812, 814 (Tex. App.—Corpus Christi 1992, writ denied); *Manville v. Garrison*, 538 S.W.2d 819, 820 (Tex. Civ. App.—Houston [14th Dist.] 1976, writ ref'd n.r.e.). In this case, the provisions of the mediated settlement agreement pursuant to which Dahlman received the payments were not incorporated into the order modifying the terms of the trust. Therefore, the authority cited by Falcon International Bank is not applicable.

Even if we were to consider the doctrine of quasi-estoppel, we conclude Dahlman cannot be estopped from the position she is taking. Quasi-estoppel prevents "a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken." *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 864 (Tex. 2000). "The doctrine applies when it would be unconscionable to allow a person to maintain a position inconsistent with one to which he acquiesced, or from which he accepted a benefit." *Id*. Even under this doctrine, Dahlman cannot be precluded from arguing that the probate court was without authority to order modifications to the trust that were in violation of section 112.054; in simplest terms, the modifications were either authorized by section 112.054 or they were not. We have determined that some of the modifications were not authorized.

## SANCTIONS AGAINST MEDIATOR

Dahlman contends that the probate court should have imposed sanctions against the mediator because he filed the petition in the absence of standing and requested modifications contrary to the purposes of the trust and the intention of the settlor. We review a trial court's rulings on sanctions under an abuse of discretion standard. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007). Because we hold that the mediator had standing and that some of the requested

modifications were permissible, the probate court did not abuse its discretion in denying the sanctions.

Even if we had held to the contrary, however, the probate court still would not have abused its discretion in denying the sanctions. Sanctions are not appropriate in the absence of a showing of bad faith. *See* TEX. R. CIV. P. 13 (allowing sanctions to be imposed for a pleading that is groundless and brought in bad faith). "Improper motive is an essential element of bad faith." *Robson v. Gilbreath*, 267 S.W.3d 401, 407 (Tex. App.—Austin 2008, pet. denied). "Bad faith is not simply bad judgment or negligence, but means the conscious doing of a wrong for dishonest, discriminatory, or malicious purpose." *Id.*; *see also Harrison v. Harrison*, 363 S.W.3d 859, 863 (Tex. App.—Houston [14th Dist.] 2012, no pet.). In this case, no evidence was presented to support a finding of bad faith. To the contrary, the evidence conclusively established the absence of bad faith as a matter of law based on the provisions in the mediated settlement agreement and the authority granted to the mediator by the beneficiaries and the trustee.

### APPELLATE SANCTIONS

The mediator requests that we impose appellate sanctions on Dahlman. This court is authorized to impose sanctions if it determines that an appeal is frivolous. TEX. R. APP. P. 45. "Whether to grant sanctions for a frivolous appeal is a matter of discretion that this court exercises with prudence and caution and only after careful deliberation in truly egregious circumstances." *Gard v. Bandera County Appraisal Dist.*, 293 S.W.3d 613, 619 (Tex. App.—San Antonio 2009, no pet.). "Under Rule 45, recovery is authorized if an appeal is objectively frivolous and injures an appellee." *Id.* "To determine whether an appeal is objectively frivolous, we review the record from the standpoint of the advocate and decide whether the advocate had reasonable grounds to believe the case could be reversed." *Glassman v. Goodfriend*, 347 S.W.3d 772, 782 (Tex. App.—Houston [14th Dist.] 2011, pet. denied). "If an appellant's argument on appeal fails to convince

us but has a reasonable basis in law and constitutes an informed, good-faith challenge to the trial court's judgment, sanctions are not appropriate." *Gard*, 293 S.W.3d at 619.

Although we can sympathize with the mounting frustrations of all involved and agree that the ongoing barrage of litigation and family discord are not circumstances Willa could have anticipated, in light of our holdings in this opinion, we conclude the appeal was not frivolous.

CONCLUSION

The portions of the probate court's orders adding the provisions in Article VI, Paragraphs A-3, A-4, A-5, and A-6 to require Dahlman and Michael Hubberd to maintain health and general liability insurance are affirmed. The portions of the probate court's orders adding the provisions in Article VI, Paragraphs A-3, A-4, A-5, and A-6 to require payment of the premiums for such insurance from the trust income and authorizing the withholding of distributions of income and principal are reversed, and judgment is rendered that those modifications are not authorized by section 112.054 of the Code.

Catherine Stone, Chief Justice