

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| GARRY WADE CROSSLEY, | § | No. 08-23-00104-CV |
| Appellant, | § | Appeal from the |
| v. | § | 150th Judicial District Court |
| KAREN KAY CROSSLEY, | § | of Bexar County, Texas |
| Appellee. | § | (TC# 2021-CI-04601) |

## MEMORANDUM OPINION

Appellant Garry Wade Crossley is the beneficiary of, or has the power to designate the beneficiary, in two trusts established by his mother. He filed suit requesting that the court determine whether he or his sister, Appellee Karen Kay Crossley, is the trustee. In the alternative, he sought termination, modification, or reformation of the trusts. The trial court granted summary judgment in Karen's favor, denying Gary all the relief that he sought. Garry appeals, claiming the trial court erred in: (1) granting the summary judgment motion, (2) denying him more time to conduct discovery, and (3) awarding of attorney's fees. We affirm in part and reverse in part.

## FACTUAL AND PROCEDURAL BACKGROUND

This appeal is the latest chapter in a long-standing and contentious family dispute. Garry and Karen are siblings. Their mother, Maxine Crossley, owned a 1200-plus-acre ranch in Blanco

and Llano Counties.[1] Before the events here, Maxine deeded to Garry, Karen, and Karen's son Seth Wayne Turnbo each a 142-acre undivided interest in the ranch.

In 1994, Maxine executed several documents as part of an estate plan: a total of seven trusts and the Crossley Family Partnership. Two of those trusts are at issue here: the Garry Remainder Trust and the Garry Family Trust (collectively the Garry Trusts). Karen was named the trustee of both trusts with absolute discretion about when, how much, and to whom to make trust distributions. When the Garry Trusts were created, Maxine contributed $100 to each and Garry deeded his 142-acre interest in the ranch to the Garry Remainder Trust. That same day, Karen, acting as trustee, executed deeds transferring the property from the Garry Remainder Trust to the Crossley Trust which then deeded it to the Crossley Limited Partnership. The Garry Trusts hold an approximate 40% interest in the partnership. The record does not show the value of the partnership or each trust's share, but Garry alleges that in 2008, they held more than $8 million in assets.

Karen later signed resignations as trustee of the Garry Trusts. The resignations were dated November 5, 1994, but Garry claims that they were signed on May 2, 1996. Some documents in our record show that Garry in 1994 and 1995, as trustee of the Garry trusts, approved various transactions that Karen also signed in her capacity as trustee for the Crossley Trust and her families trusts. Other documents show Garry, as trustee of the Garry Family Trust, approving notes payable to the Crossley trust in 1994.

Since the creation of the trusts and partnership, family relationships have soured. Karen made a single distribution in 2003 to Garry in the amount of $50,000. Garry sued her in a probate

[1] This case was transferred pursuant to the Texas Supreme Court's docket equalization efforts. Tex. Gov't Code Ann. § 73.001. We follow the precedent of the Fourth Court of Appeals to the extent they might conflict with our own. *See* Tex. R. App. P. 41.3.

court in 2007 for breach of fiduciary duty and for a declaration of his rights and status under the trust. The court dismissed the case without prejudice for lack of a justiciable controversy. Karen evicted Garry from the ranch and Maxine wrote Garry out of her will. Maxine also amended all the trusts to delete Garry as a potential successor trustee.

In 2021, Garry filed this suit. He sought a declaration that he is the trustee of the Garry Trusts or, in the alternative, he sought termination or modification of the trusts to name him as trustee or remove the trustee's discretion in making trust distributions. After the discovery period was over, Karen moved for traditional summary judgment. Garry responded by moving to modify the discovery control plan and to continue the summary judgment hearing, both of which were denied by the trial court. The trial court granted summary judgment for Karen dismissing all Garry's claims with prejudice and awarded her attorney's fees of $453,366.00 in past fees and conditional fees of $185,000.00 for defending against unsuccessful post-judgment and appellate attacks.

In this appeal, Garry raises three broad issues, claiming the trial court erred in: (1) denying his motion to continue the summary hearing and modify the discovery control plan (so he could conduct more discovery); (2) granting the summary judgment; and (3) awarding of attorneys' fees.

## ANALYSIS

### A. Garry's claims

Garry sued for declaratory relief seeking two declarations: that Karen resigned as trustee on November 5, 1994, and that Garry is the trustee of the Garry Trusts. In the alternative, if the court found that Karen is the trustee, he sought termination, modification, or reformation of the trusts. If the trusts were not terminated, Garry requested that he be substituted as trustee or that the Court remove Karen's absolute discretion about whether to make distributions to Garry.

3

## (1) Declaratory judgment

In both his petition in the trial court and his brief on appeal, Garry characterizes his claims seeking a determination about his status as trustee as being brought under Section 115.001 of the Texas Property Code. That section provides that "a district court has original and exclusive jurisdiction" over categories of cases, including those requesting that a court "construe a trust instrument," but it does not itself provide for a cause of action. Tex. Prop. Code Ann. § 115.001(a). Because Garry asked the court to determine whether he is the trustee under the trust, we construe his claim as one for declaratory judgment brought under Chapter 37 of the Civil Practices and Remedies Code. Tex. Civ. Prac. & Rem. Code Ann. §§ 37.004, .005; *Di Portanova v. Monroe*, 229 S.W.3d 324, 329 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) ("We agree that the construction of a trust or will may be the proper subject of a declaratory action.").

## (2) Termination, modification and reformation of the trust

A court may modify or reform the terms of a trust, change a trustee, or terminate a trust if one of several predicates are shown. Tex. Prop. Code Ann. § 112.054. Garry's suit also alleges the existence of four statutory predicates:

1. "[T]he purposes of the trust have been fulfilled or have become illegal or impossible to fulfill." Tex. Prop. Code Ann. § 112.054(a)(1).

2. "[M]odification of administrative, nondispositive terms of the trust is necessary or appropriate to prevent waste or impairment of the trust's administration." *Id*. § 112.054(a)(3).

3. "[C]ontinuance of the trust is not necessary to achieve any material purpose of the trust" or the requested order "is not inconsistent with a material purpose of the trust." *Id*. § 112.054(a)(5)(A-B).

4. "[R]eformation of administrative, nondispositive terms of the trust is necessary or appropriate to prevent waste or impairment of the trust's administration." *Id*. at §112.054(b-1)(1).

4

If one or more of these predicates are met, a court has discretion to modify or terminate a trust, but must do so "in the manner that conforms as nearly as possible to the probable intention of the settlor." *Id*. § 112.054(b).

### (3)   Karen's summary judgment and our standard of review

Karen filed a traditional motion for summary judgment arguing that there are no issues of fact on her status as trustee or the non-existence of statutory predicates under § 112.054. As the movant, she had the burden of disproving these predicates as a matter of law by showing that "there is no genuine issue as to any material fact and [she] is entitled to judgment as a matter of law." Tex. R. Civ. P. 166a(c); *Friendswood Dev. Co. v. McDade & Co.*, 926 S.W.2d 280, 282 (Tex. 1996). Garry did not have a duty to present evidence raising a fact issue unless Karen carried her burden. *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 511–12 (Tex. 2014).

Karen argues that the trial court had discretion whether to grant or deny Garry's request for termination or modification and that our review must therefore be under an abuse of discretion standard. But because this case is before us from the grant of a summary judgment, the standard of review in this posture is different than if we were reviewing a judgment denying termination, modification, or reformation after a final trial. Summary judgments are reviewed de novo. *BPX Operating Co. v. Strickhausen*, 629 S.W.3d 189, 195–96 (Tex. 2021). "When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 579 (Tex. 2017).

All this brings us to the Garry's first issue, which was his complaint that the trial court should have modified the discovery control plan to allow him more time to develop his own evidence to respond to Karen's motion for summary judgment.

## B. Modification of discovery control plan

Garry requested, and the trial court denied, modification of the discovery control plan so that he could depose Karen and her expert witnesses, and to name his own expert witness. A denial of the modification of discovery deadlines is reviewed for an abuse of discretion. *Abdelhak v. Farney*, No. 04-07-00121-CV, 2007 WL 4180133, at *1 (Tex. App.—San Antonio Nov. 28, 2007, no pet.) (mem. op.). "The trial court abuses its discretion when it acts without reference to any guiding principles. *Id*.

Garry pleaded that his suit was subject to a level 2 discovery control plan. Even had he not, discovery would have been under level 2: level 1 does not apply to suits seeking non-monetary relief and level 3 can only be court-ordered. Tex. R. Civ. P. 169, 190.2 (a), 190.4(a). Under level 2, discovery begins 30 days after an appearance or an answer is filed and ends the earlier of 30 days before trial or nine months after disclosures are due. Tex. R. Civ. P. 190.3(b)(1)(A), 194.2(a). The record does not show when Karen was served, but she filed an answer on May 10, 2021. She asserts, and Garry does not dispute, that the discovery period began 30 days later, on June 10, 2021. Using that date, the discovery period ended on March 10, 2022. Garry's designation of an expert was due 90 days before that, on December 10, 2021. *See* Tex. R. Civ. P. 195.2.

A discovery control plan can be modified "when the interest of justice requires." Tex. R. Civ. P. 190.5. In addition, allowance of additional discovery is mandatory in two circumstances:

    (a) related to new, amended or supplemental pleadings, or new information disclosed in a discovery response or in an amended or supplemental response, if:

> (1) the pleadings or responses were made after the deadline for completion of discovery or so nearly before that deadline that an adverse party does not have an adequate opportunity to conduct discovery related to the new matters, and
>
> (2) the adverse party would be unfairly prejudiced without such additional discovery;
>
> (b) regarding matters that have changed materially after the discovery cutoff if trial is set or postponed so that the trial date is more than three months after the discovery period ends.

*Id.*

Garry claims that he is entitled to a discovery extension because *he* filed an amended petition. But the text shows the rule is designed to protect the *adverse* party's right to conduct more discovery when an amended pleading or response is filed. Garry cannot restart discovery deadlines by simply filing an amended petition.[2]

Garry also contends that he was entitled to additional discovery on the ground that he learned new information from discovery responses. He argues that the two expert opinions attached to Karen's motion for summary judgment contained new opinions not previously disclosed to him. As Karen points out, however, he did not move to strike the opinions on this basis. In his brief, Garry does not specify what opinions of CPA Gary McIntosh were new or how they were material.[3] For CPA Robert Herbst, Garry provides slightly more specifics, referencing statements in Herbst's affidavit opining on the parties' status as trustee. But the record does not

---

[2] Nor does Garry's amended petition make any new claims. Both seek a declaration that he is trustee or termination, modification, or reformation of the trusts.

[3] "[A] brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." Tex. R. App. P. 38.1(i). By not adequately briefing this point, Garry has not preserved the issue for appellate review. *Palau v. Act Investments, Inc.*, No. 04-19-00823-CV, 2020 WL 5214669, at *2 (Tex. App.—San Antonio Sept. 2, 2020, no pet.) (mem. op.).

contain the disclosures Karen made about Herbst's opinions, without which there is no support for the argument that his opinions used as summary judgment evidence were new.

Finally, the trial court did not abuse its discretion by failing to modify the discovery control order "in the interest of justice." Tex. R. Civ. P. 190.5. Garry claims that Karen engaged in gamesmanship by ignoring his requests for her deposition until after she moved for summary judgment. But the record shows that Karen provided dates for depositions in October 2021, about two months before Garry's deadline to designate an expert and five months before the end of the discovery period. Garry chose not to schedule the depositions until he could file an amended petition, which he did not do until April 28, 2022, after the end of the discovery period. Because Garry did not exercise due diligence in conducting discovery and designating experts during the discovery period, the trial court did not abuse its discretion in denying his motion to modify the discovery control plan. *Abdelhak*, 2007 WL 4180133, at *2.

## C.  Merits of the summary judgment

We therefore turn to merits of the trial court's ruling on Karen's summary judgment on the record that was before it. That ruling addressed several issues under the trust that we take in turn.

### (1)  Status as trustee

Gary claims that Karen resigned as trustee, and that he has filled that role. Karen responds her resignation was never effective and that Gary has made conflicting claims in prior litigation. We start with the terms of the trust:

Section 3- The Trustee

> A. Karen Kay Crossley shall act as trustee under this instrument, but if she should die or resign by submitting a written statement of resignation to such one of the persons listed below under this Subsection A who shall then be next in line to succeed her as trustee or if she should for any other reason cease to act, then in any of the situations just described the following persons and entities shall serve

8

as trustee, in the order named, so that if one of them dies, resigns or fails or ceases to serve for any reason the next one shall serve:

(1)     Such persons (other than the grantor) or entity or entities as may from time to time have been designated in writing by Maxine Crossley. In the case of a conflict in any such designation by Maxine Crossley, the last made in time shall control.

(2)     Garry Wade Crossley.

(3)     Such person or persons (other than the grantor) or entity or entities as may from time to time have been designated in writing by Karen Kay Crossley. In the case of a conflict in any such decision by Karen Kay Crossley, the last made in time shall control.

(4)     Such person or persons (other than the grantor) or entity or entities as may from time to time have been designated in writing by Garry Wade Crossley. In the case of a conflict in any such designation by Garry Wade Crossley, the last made in time shall control.

Karen signed resignations dated November 5, 1994, as trustee for both Garry Trusts. At the time of these resignations, Maxine had not designated a successor trustee as allowed by § 3A(1) of the trust, so the next in line as trustee was Garry. Karen claims that her resignations were "contingent" and held by Maxine. On appeal, Karen argues that her resignations never became effective because she never submitted them to the successor under the trusts. But her summary judgment evidence was slightly different in an important way. Her affidavit states that Maxine never accepted her resignations. By the trusts' terms, a resignation did not have to be submitted to or accepted by Maxine to be effective. Karen's summary judgment evidence was silent on whether she submitted the resignation to her successor and so was not sufficient to prove that she did not resign.

9

Even though Karen did not meet her burden, Garry presented evidence that raised an issue of fact. As trustee, Garry signed a warranty deed transferring his 142 acres to the Garry Remainder Trust, an Amendment of a purchase remainder interest agreement, purchase notes, and security agreement. Karen knew that Garry was taking these actions as trustee because she also signed the same amendment and security agreement in her role as trustee of the Karen Trusts and the Crossley Trust. Garry also submitted a letter by the same attorney who drafted the trusts to the CPAs reflecting that there were successor trustees. This evidence raised a fact issue about whether Karen resigned as trustee.[4]

Karen contends that even if her signed resignations were effective, she resumed her position as trustee because Garry failed to serve and because she has been performing the duties of a trustee.[5] The trusts allow a successor to take over as trustee without a court proceeding when a trustee fails or no longer serves for certain reasons: death, resignation, removal, or incapacity resulting from illness, injury, advanced age, or other legal disability. Karen does not allege that Garry failed to serve for one of these reasons and there are no provisions in the trust allowing a successor to take over as trustee without court action and only upon their subjective opinion that the trustee is failing to do his duty. Karen's actions as trustee (for example, signing tax returns each year) do not make her trustee. *Alpert v. Riley*, 274 S.W.3d 277, 289 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) ("We have not located, and [Appellee] does not identify, any authority

_____

[4] Garry also submitted as summary judgment evidence a letter from Attorney Croman to Garry's bankruptcy attorney that states that Garry is the trustee of both trusts. The court sustained Karen's objection to the evidence. Because we find that, even without this letter, Garry has shown a fact issue, we do not decide if the trial court's evidentiary ruling was correct.

[5] In her brief, she identifies her actions as trustee "designat[ing] herself as trustee in tax returns and other documents signed after 1996."

that recognizes a trustee by estoppel in the presence of express trust language outlining the procedure for appointment of a successor trustee.").

Karen also argues that Garry is not the trustee because Maxine deleted him as a successor trustee in 2009. The trusts are irrevocable and state that "[n]o one shall have the right or power to alter, amend, or revoke the trust instrument." *Lee v. Rogers Agency*, 517 S.W.3d 137, 149 (Tex. App.—Texarkana 2016, pet. denied) (the terms of irrevocable trusts "generally cannot be changed by the settlor once property is conveyed to the trust"). Although the trusts still allowed Maxine to *add* successor trustees, they did not allow her to alter the trusts to completely *remove* successor trustees.

Finally, Karen argues that Garry's statements made during the 2007 probate court case are judicial admissions that Karen was the trustee. A judicial admission is a statement of fact by a party during a court proceeding that "relieves his adversary from making proof of the fact admitted but also bars the party himself from disputing it." *Gevinson v. Manhattan Const. Co. of Okl.*, 449 S.W.2d 458, 466 (Tex. 1969). Garry's statements during the prior suit are not judicial admissions because they were not made during *this* case. *In re M.M.O.*, 981 S.W.2d 72, 84 (Tex. App.—San Antonio 1998, no pet.) ("As opposed to judicial estoppel, to qualify as a judicial admission the statement must have been made in the current proceeding."). Moreover, "[a] party may not judicially admit a question of law." *H.E. Butt Grocery Co. v. Pais*, 955 S.W.2d 384, 389 (Tex. App.—San Antonio 1997, no pet.). Garry's statements that he was not a trustee, even if made in this present suit, could not be admissions because trustee status is a legal determination. *See, e.g., Neal v. Wisconsin Hard Chrome, Inc.*, 173 S.W.3d 891, 894 (Tex. App.—Texarkana 2005, no pet.) (party could not judicially admit to being an employee, a legal conclusion based on a definition in the Labor Code).

Taking all of Garry's evidence as true and indulging every inference in his favor as we must, we hold that there is a fact issue about whether Karen resigned as trustee and Garry succeeded her. We reverse the summary judgment on Garry's declaratory judgment claim.

### (2) Purpose of trust

Three of the termination and modification predicate grounds alleged by Garry involve a trust's purpose: (1) the purposes have been fulfilled, (2) continuing the trust is not necessary to achieve the purpose of the trust, and (3) the requested modification or termination is "not inconsistent with a material purpose of the trust." Tex. Prop. Code Ann. § 112.054(a)(1), (5)(A), (5)(B). As the movant for summary judgment, Karen had the burden of disproving these grounds.

Garry's position is that the purposes of the Garry Trusts were to avoid estate taxes and, since Maxine died in 2009, that purpose has been fulfilled. Karen's position is that "the overall purpose of the estate plan is to keep the Ranch in the Crossley family by initially avoiding a forced sale of the Ranch to pay inheritance taxes upon Maxine's death and then to prevent ownership interests in the Partnership from being acquired by non-family persons or entities, particularly the creditors (or their transferees) of trust beneficiaries." We disagree with both Garry and Karen.

We construe a trust according to the express language used. *In re Willa Peters Hubberd Testamentary Tr.*, 432 S.W.3d 358, 367 (Tex. App.—San Antonio 2014, no pet.); *In re Ignacio G. & Myra A. Gonzales Revocable Living Tr.*, 580 S.W.3d 322, 328 (Tex. App.—Texarkana 2019, pet. denied). The Garry Trusts do not mention the ranch or keeping the ranch in the Crossley Family. Karen asks us to construe the trusts together with the partnership agreement as we would for contracts that are part of the same transaction. *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 840 (Tex. 2000). Even if we do so, we still do not find evidence of the purpose that Karen advances. The partnership agreement states only that its purposes "shall be to

invest, hold and reinvest in such personal and real property as the Managing partner may determine from time to time."[6] It too says nothing about the ranch.

Both parties confuse a trust's purpose with a settlor's intent. A settlor's intent is not "necessary or controlling" to a finding of a trust's purpose. *Swantner-Carter v. Frost Nat. Bank*, No. 13-06-00545-CV, 2008 WL 3521253, at *3 (Tex. App.—Corpus Christi–Edinburg Aug. 7, 2008, no pet.) (mem. op.). In determining a trust's purpose, courts look solely to the trust's language of *how* the trust is to be used and not why a grantor chose to transfer property *via* a trust instead of any other method. For example, in *Frost Nat. Bank of San Antonio v. Newton*, the trustee filed a declaratory judgment suit seeking a determination of whether the trust could be terminated, which turned on whether the purposes of the trust had been fulfilled. 554 S.W.2d 149, 153 (Tex. 1977). The terms of the trust required that the trust income, and principal if the income was insufficient, be used to pay for the education of the grantor's great-nephew and great-nieces. *Id*. at 151–52. Excess income was to be paid to the grantor's nieces. *Id.* at 152. Upon the termination of the trust, the trust assets were to be distributed to the grantor's nieces or their children. *Id.* The nieces argued that the trust's purpose was fulfilled because their children had completed their education. *Id.* at 153–54. The court considered the purposes of the trust to be exactly what the trust was written to accomplish: education of the grantor's great-nephew and great nieces *and* the distribution of excess income to her nieces. *Id*. at 154. The court was restricted to the language of the trust and could not speculate that one purpose was primary and another only incidental. *Id.*

---

[6] Assuming for the sake of argument that the purpose of the trusts was to keep the ranch in the family, Karen fails to explain how that purpose has not been fulfilled since Garry's interest in the real property has been transferred to the partnership. As Karen recognizes, the ranch property is owned by the partnership and under the terms of the agreement, each partner waived the right to force a partition.

Because the excess income distribution not been fulfilled, the court held that the trust could not be terminated. *Id*.; *see also In re Willa*, 432 S.W.3d at 367 (determining from the language of the trust's distribution provisions that its purposes were to distribute the trust's income to the grantor's children, and to distribute principal to the grantor's children or grandchildren for their "health, support, education, and maintenance . . . ").

The Garry Remainder Trust provides that the trustee can, in his or her absolute judgment, distribute funds from the trust to Garry or a person or entity that he may appoint. The payments "shall be made only for the purposes of health, maintenance and support" of the distributee. The Garry Family Trust provides that the trustee has the absolute discretion to make distributions to Garry's descendants and any person or entity that he appoints. Both trusts can be terminated if they become uneconomical. But otherwise, they continue for 21 years after the death of certain people listed by the trusts. It is these terms, and no external sources, from which we must derive the purposes of the Garry Trusts. Those purposes then are to make distributions to Garry, people or entities he may appoint, or his descendants. These purposes have not been fulfilled and it is necessary for the Garry Trusts to continue to achieve their purposes. Therefore, Karen met her burden and disproved two predicate grounds to terminate or modify a trust, § 112.054(a)(1) and (a)(5)(A), and summary judgment on those bases was properly granted.

But Karen offered no evidence to disprove that the Garry Trusts could be modified (as distinct from terminated) consistent with their material purposes. Tex. Prop. Code Ann. § 112.054(a)(5)(B). Summary judgment on that basis was improper.

### (3) Modification or reformation of administrative, nondispositive terms

Garry sought to modify or reform the trusts to name him as trustee or to remove Karen's absolute discretion to make distributions. He claimed that these were administrative,

14

nondispositive terms and that Karen's failure to make distributions or withdraw the trusts from the partnership impaired the administration of the trust.

As with her arguments about the purpose of the trust, Karen looks outside the trust documents themselves to Maxine's relationship with Garry. She argues that Maxine did not intend for Garry to be trustee because she explicitly deleted him as a successor trustee and that she intended for Karen to have absolute discretion because of the "distrustful relationship" between Maxine and Garry and his history of unsuccessful business ventures and unemployment. Karen's focus on Maxine's intent is misplaced. Maxine's intent may become an important factor *after* a predicate for termination or modification is established. *Id*. § 112.054(b) ("The court shall exercise its discretion to order a modification or termination . . . in the manner that conforms as nearly as possible to the probable intent of the settlor."). But intent does not help determine whether a term of a trust is administrative and nondispositive. We must turn to the terms of the trust of find that answer.

The basis for Gary's argument for a change of trustee relies on this language from the statute: "a court may order that the trustee be changed" . . . "if" . . . "modification of administrative, nondispositive terms of the trust is necessary or appropriate to prevent waste or impairment of the trust's administration[.]" *Id*. § 112.054(a)(3). When we apply statutory language, we do so with the objective of "giv[ing] effect to the Legislature's intent, which requires us to first look to the statute's plain language." *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015) (per curiam). We construe the statute's words according to their plain and common meaning, unless a contrary intention is apparent from the context or unless such a construction leads to absurd results. *Dyer v. Medoc Health Servs., LLC*, 573 S.W.3d 418, 424 (Tex. App.—Dallas 2019, pet. denied).

We should "read statutes contextually to give effect to every word, clause, and sentence[.]" *Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 838 (Tex. 2018).

Gary focuses on "waste or impairment of the trust administration" under Karen's direction. But another phrase in the provision that Gary proceeds under is that modification must apply to an "administrative, nondispositive term." Tex. Prop. Code Ann. § 112.054(a)(3). The Property Code does not separately define the terms "administrative", or "nondispositive" or collectively the phrase "administrative, nondispositive term." No Texas case has to our research defined that collective phrase. We find it used in no other statute. Nothing in the legislative history of § 112.054 illuminates what the legislature meant by those conjoined terms. But based on the summary judgment record we can say that the identity of the trustee in this trust and the discretion given the trustee is something more than an "administrative, nondispositive" term.

An "administrative term" in a trust might describe the identity of a trustee. *See* Black's Law defines "administrative" to mean "Of, relating to, or involving the work of managing a company or organization, executive." *Administrative*, Black's Law Dict. (10th ed. 2014). But the word "administrative" is tied by a comma to the word "nondispositive" which means these are coordinate adjectives that modify the same noun. *See* Bryan A. Garner, Garner's Modern American Usage 878 (3d ed. 2009) (explaining that "coordinate adjective" is "[a]n adjective that appears in a sequence with one or more related adjectives to modify the same noun."); *Lightfoot v. Gilley*, No. 22-30374, 2023 WL 2586313, at *2 (5th Cir. Mar. 21, 2023) (per curiam) ("Coordinate adjectives are often used to convey a precise description of a noun."); *see also Carlile v. Reliance Standard Life Ins. Co.*, 988 F.3d 1217, 1227 (10th Cir. 2021) (interpreting a statute that provides coverage for an "active, Full-time employee" and holding that, to be eligible for coverage, the employee must be both "active" and "Full-time"); *Suzie's Brewery Co. v. Anheuser-*

*Busch Companies, LLC*, 519 F. Supp. 3d 839, 851–52 (D. Or. 2021) ("Multiple adjectives that all modify a single (or head) noun are known as 'coordinate adjectives' and generally are separated by commas or the word 'and.'") (citing Bryan A. Garner, *The Chicago Guide to Grammar, Usage, and Punctuation* 69 (2016) (*Chicago Guide*). The import here? Any trust "term" must be *both* administrative and nondispositive for § 112.054(a)(3) to apply.

We find no dictionary definition for "nondispositive" but "dispositive" means "Being a deciding factor; (of a fact or factor) bringing about a final determination" and "of relating to, or effecting the disposition of property by will or deed." *Dispositive*, Black Law Dictionary (10th ed. 2014). Adding "non" before the word dispositive would have it mean the opposite—not being a deciding factor or not effecting the disposition of property. And that is where Gary's theory of replacing the trustee under § 112.054(a)(3) stumbles. Under the terms of the trust as written, the trustee has complete discretion to make distributions or not.[7] The trustee is accorded broad powers, including to (1) take possession of trust property; (2) invest trust assets; (3) sell, lease or exchange trust property; (4) borrow on behalf of the trust; (5) administer mineral interest; (6) obtain, continue, and operate a business; (7) merge this trust with another trust; (8) employ professionals to assist the trustee; and (9) even change the jurisdiction under which the trust is administered. With such complete discretion and authority vested with the trustee, we agree with

---

[7] The trust describes that discretion in this way:

> The trustee may determine in his absolute judgment, which shall not be subject to question or review by any person,  entity or court at the instance of any one under any circumstances: (a) the amount of principal (or none at all) which may at any time be distributed (b) the particular member of members of said class who shall at any time receive the benefit thereof to the exclusion of other members of the class, (c) the amount or proportion thereof which shall be allocated to any particular member of said class, and (d) the installments in which payments or applications of  principal shall be made to any member, with full authority at any time to vary the manner of the distribution of  principal which may have been adopted at the time of any previous distribution. The trustee need not accord equality of treatment. He may deplete the principal, even to the point of exhaustion, at any time, either as a result of a series of invasions, or all at once, in his reasonable discretion.

Karen that the *identity* of the trustee is a dispositive term of this trust. Who gets to exercise the broad discretion and powers under this trust might in fact be its most determinative term. Accordingly, Gary's theory under § 112.054(a)(3) fails because that provision can only apply to a "administrative [and] nondispositive" terms.

And for the same reason, his theory to *reform* the trust to name himself as trustee under § 112.054(b-1)(1) fails as well. The only difference between (a)(3) and (b-1)(1) is the whether the trust is "modified" or "reformed." And the difference in those terms is that reformation makes any change retroactive, while modifications are effective prospectively. *See* § 112.054(c) ("The reformation of a trust under and order described by Subsection (b-1) is effective as of the creation of the trust."). But substantively, the coordinate adjectives "administrative, nondispositive" appears in both sections, and it is that phrase that negates Gary's theory for changing trustees under § 112.054(a)(3) and (b-1)(1).[8]

Similarly, the trustee's discretion over when and to whom to make a distribution is dispositive as it pertains to how the principal of the trust is to be disposed. In *In re Willa Peters Hubberd Testamentary Trust*, the trust provided for all trust income to be distributed periodically to the beneficiaries. 432 S.W.3d at 361. The probate court ordered that the beneficiaries maintain health and liability insurance and modified the trust to withhold their income distributions until they obtained insurance and to authorize the trustee to pay the premiums out of the trust income. *Id.* at 363–64. The court of appeals held that these modifications were not authorized under § 112.054(a)(3) because "provisions pertaining to the distribution of the 'entire net income' and

---

[8] The other requirement of these provisions is that modification or reformation is "necessary or appropriate to prevent waste or impairment of the trust's administration." Tex. Prop. Code Ann. § 112.054 (a)(3), (b-1)(1). We need not reach the question of whether Karen's summary judgment motion negated that requirement.

principal are dispositive terms." *Id*. at 368. Because the discretion provided to the trustee affects how the distributions are made, it is a dispositive term. Summary judgment against Garry on his request to reform the trust to remove the trustee's absolute discretion was proper.[9]

### (4) Summary of holdings

In summary, we hold that Karen did not carry her burden for traditional summary judgment by disproving that Garry is a trustee of the Gary Trusts. She did not prevail on disproving Gary's trust modification claim that might allow for modification of the trust to fulfill its "material purpose" under § 112.054 (5)(B). We reverse the summary judgment on those discreet issues. Karen did prevail, however, on the following claims asserted by Gary:

(1) termination of the trust under § 112.054(a)(1) or (5)(A) because its purpose has been fulfilled;

(2) modification of an administrative, nondispositive term to effect a change of trustee (without reference to who is the current trustee) under § 112.054(a)(3);

(3) reformation of administrative, nondispositive term to effect a change of trustee (without reference to who is the current trustee) under § 112.054(b-1)(1);

(4) modification or reformation of the discretion accorded to the trustee to make distributions under § 112.054(a)(3) or § 112.054(b-1)(1).

We affirm the trial court's judgment as to all these theories.

---

[9] Even though a trustee has absolute discretion, their actions can still be reviewed for "fraud, misconduct, or clear abuse of discretion." *Beaty v. Bales*, 677 S.W.2d 750, 754 (Tex. App.—San Antonio 1984, writ ref'd n.r.e.); *Di Portanova v. Monroe*, 229 S.W.3d 324, 330 (Tex. App.—Houston [1st Dist.] 2006, pet. denied); Tex. Prop. Code Ann. § 113.029(a) ("Notwithstanding the breadth of discretion granted to a trustee in the terms of the trust, including the use of terms such as 'absolute,' 'sole,' or 'uncontrolled,' the trustee shall exercise a discretionary power in good faith and in accordance with the terms and purposes of the trust and the interests of the beneficiaries."). Garry has not brought a claim for fraud, abuse, or abuse of discretion and our review and we express no opinion on those issues.

**D. Attorney's fees**

Karen requested attorney's fees under both the Uniform Declaratory Judgment Act and the Texas Trust Code. Both allow for fees that are "equitable and just." Tex. Civ. Prac. & Rem. Code Ann. § 37.009; Tex. Prop. Code Ann. § 114.064(a). Because we affirm the summary judgment on some grounds, but reverse on others, we reverse the award of attorney's fees and remand for a determination of what is equitable and just considering our ruling. *Morath v. The Tex. Taxpayer & Student Fairness Coal.*, 490 S.W.3d 826, 885 (Tex. 2016) ("Where the extent to which a party prevailed has changed on appeal, our practice has been to remand the issue of attorney fees to the trial court for reconsideration of what is equitable and just."); *Neeley v. W. Orange-Cove Consol. Indep. Sch. Dist.*, 176 S.W.3d 746, 799 (Tex. 2005) ("Because we have concluded that the plaintiffs are entitled to only a part of the relief granted by the district court, and that the intervenors are entitled to no relief, we reverse the award of attorney fees and remand the case to the district court to reconsider what award of attorney fees, if any, is appropriate.").

## CONCLUSION

We overrule Gary's first issue. We sustain Gary's second issue in part and overrule it in part as detailed in the "Summary of Holdings" section above. We sustain Gary's third issue in part by reversing the attorneys fees as awarded in the judgment below, but remand for what might be equitable and just considering our ruling. We remand the case for further proceedings not inconsistent with this opinion.


JEFF ALLEY, Chief Justice

May 14, 2024

Before Alley, C.J., Palafox and Soto, JJ.

20